NUMBER 13-08-00222-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

JOSE R. CARRERAS, M.D., Appellant,


v.


JULIAN TREVINO, Appellee.

 


On appeal from the County Court at Law No. 5 

of Hidalgo County, Texas.

 


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Benavides


 Opinion by Chief Justice Valdez
 

 Appellant, Jose R. Carreras, M.D., appeals the denial of his motion to dismiss a
healthcare liability claim brought by appellee, Julian Trevino. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(9) (Vernon 2008). In a single issue, Carreras contends that the trial
court abused its discretion by finding that the statutorily required expert medical report was
adequate because it was rendered by a physician who did not demonstrate his
qualification. Id. § 74.351 (Vernon Supp. 2008), § 74.401 (Vernon 2005). We reverse and
remand.

I. Background

 On April 17, 2006, Carreras, an orthopedic surgeon, performed a total right knee
replacement surgery on Trevino. At several post-operative follow-up visits with Carreras,
Trevino complained of severe and disabling pain, but Carreras allegedly ignored Trevino's
concerns. Trevino was then treated by a different orthopedic surgeon, who performed a
second total right knee replacement. 

 On August 28, 2007, Trevino filed a healthcare liability claim against Carreras
alleging that:

1. The surgery was incomplete or inadequate in that the total knee
replacement was not properly aligned, resulting in extreme pain.


2. The surgery was incomplete or inadequate in that the femoral
component of the prosthesis was loose.


3. The surgery was incomplete or inadequate in that the tibial
component of the prosth[esis] was undersized.


4. The surgery was incomplete or inadequate in that there were pieces
of methyl methacrylate remaining in the joint.


5. When [Trevino] returned to Dr. Carreras on multiple occasions
complaining of severe and disabling pain in the right knee, the Doctor
failed [to] inquire, test, and evaluate the surgery to determine that the
total knee replacement was incomplete or inadequate.


6. Dr. Carreras relied upon pain medication and anti-inflammatory
medication for patient control rather than discovering the problem with
the surgery and correcting it.


Carreras answered with a general denial. On December 21, 2007, Trevino, in an effort to
comply with section 74.351's expert report requirement, tendered the affidavit and
curriculum vitae of William R. Martin, M.D. See id. Martin, an interventional radiologist,
provided the following pertinent affidavit testimony:

I have knowledge of the accepted standards of medical care for the
diagnosis, prevention, care, treatment and cure of knee degeneration and
the diagnosis, prevention, care, treatment and cure of knee replacement by
virtue of my education, training and experiences in treating patients who
sustained knee injuries and who had knee degeneration either due to natural
processes such as osteoarthritis, or due to the effect of their injuries.


I have reviewed medical records provide[d] from Dr. Carreras and Dr. Marina
[the orthopedic surgeon who performed the second total right knee
replacement], including the operative reports. I have not been provided with
x-rays taken before or after the right knee replacement.


. . . .


Based on [a review of the] record, and my own experience and expertise, I
conclude that Dr. Carreras was below the relevant standard of care in [his]
care and treatment of Julian Trevino on April 17, 2006 in that 1) he did not
properly align and secure the jig for cutting the tibia and femur in Mr.
Trevino's right knee, 2) he did not properly align and secure the prosthesis
for the knee, and 3) he did not perform a final flexion testing of the knee
before closing the surgical wound and after cementing the prosthesis to the
knee bones. It is further my opinion that Dr. Carreras was below the relevant
standard of care in his care and treatment of Julian Trevino from April 17,
2006 to August 30, 2006 in disregarding Mr. Trevino's complaint of abnormal
pain, and not discovering the misalignment of the knee. It is further my
opinion that the neglect by Dr. Carreras was a cause of the additional
surgical procedures . . . .


On January 9, 2008, Carreras objected to Martin's report on the grounds that (1) Martin
was not qualified to offer an expert medical opinion, and (2) the report was conclusory as
to causation. Carreras moved for dismissal and an award of attorney's fees. Trevino
responded by arguing that Martin was qualified on the ground that "it is common
knowledge that orthopedic surgeons and radiologists work closely together." See Silvas
v. Ghiatas, 954 S.W.2d 50, 54 (Tex. App.-San Antonio 1997, pet. denied) (concluding, in
the review of a summary judgment, that an orthopedic surgeon who has written scholarly
articles about skeletal radiology is competent to testify in a healthcare liability suit against
a radiologist). In the alternative, Trevino sought a thirty-day extension to cure any defects
that the trial court might find in Martin's report. The trial court denied Carreras's motion to
dismiss. This interlocutory appeal followed.

II. Discussion

 In a single issue, Carreras argues that the trial court erred in overruling his challenge
to the adequacy of Martin's report on the ground that Martin did not demonstrate his
qualification to render an expert opinion in this case. Trevino responds by arguing that
interventional radiology is a surgical speciality, and therefore, Martin is qualified under
section 74.401(a)'s "training or experience" element. We disagree.

A. Standard of Review

 We review a trial court's determination as to the qualification of a witness as an
expert for an abuse of discretion. Larson v. Downing, 197 S.W.3d 303, 304-05 (Tex. 2006)
(citing Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996)); Strom v. Mem'l Hermann
Hosp. Sys., 110 S.W.3d 216, 220 (Tex. App.-Houston [1st Dist.] 2003, pet. denied). A trial
court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding
rules or principles. See Lookshin v. Feldman, 127 S.W.3d 100, 103 (Tex. App.-Houston
[1st Dist.] 2003, pet. denied). We do not disturb the trial court's discretion absent clear
abuse. Larson, 197 S.W.3d at 304 (citing Broders, 924 S.W.2d at 151).

B. Applicable Law

 To be qualified to provide opinion testimony regarding whether a physician departed
from the accepted standard of health care, an expert must satisfy section 74.401 of the civil
practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A). 
Section 74.401 provides in pertinent part:

(a) In a suit involving a health care liability claim against a physician for
injury to or death of a patient, a person may qualify as an expert
witness on the issue of whether the physician departed from accepted
standards of medical care only if the person is a physician who:


 (1) is practicing medicine at the time such testimony is given or
was practicing medicine at the time the claim arose;


 (2) has knowledge of accepted standards of medical care for the
diagnosis, care, or treatment of the illness, injury, or condition
involved in the claim; and


 (3) is qualified on the basis of training or experience to offer an
expert opinion regarding those accepted standards of medical
care.


. . . .


(c) In determining whether a witness is qualified on the basis of training
or experience, the court shall consider whether, at the time the claim
arose or at the time the testimony is given, the witness:


 (1) is board certified or has other substantial training or experience
in an area of medical practice relevant to the claim; and


 (2) is actively practicing medicine in rendering medical care
services relevant to the claim.


Id. § 74.401(a), (c). A trial court may "depart from [these] criteria if, under the
circumstances, the court determines that there is a good reason to admit the expert's
testimony," but, if the court does so, it must state the reason for the departure on the
record. Id. § 74.401(d).

 In addition to section 74.401, the trial court's decision on a medical expert's
qualification is also guided by a wealth of common-law principles. See, e.g., Philipp v.
McCreedy, No. 04-08-00922-CV, 2009 WL 2342919, at *1 (Tex. App.-San Antonio Jul. 29,
2009, no pet. h.) ("There is no doubt that Chapter 74 has spawned a cottage industry of
expert report litigation; this court alone has addressed issues relating to preliminary expert
reports . . . multiple times within the past year."). In Broders v. Heise, the leading case on
medical expert qualification, the supreme court held that not every licensed doctor is
automatically qualified to testify on every medical question. 924 S.W.2d at 152. The
supreme court has also held that a proffered expert need not practice in the same
speciality as the defendant physician to qualify as an expert for that case. See Roberts v.
Williamson, 111 S.W.3d 113, 122 (Tex. 2003). 

 According to Roberts, the trial court's inquiry should not focus on the specialty of the
physician defendant or medical expert. See id. Instead, as Broders holds, the trial court
should determine whether the proffered expert has "knowledge, skill, experience, training,
or education" regarding the specific issue before the court which would qualify the expert
to give an opinion on that particular subject. Broders, 924 S.W.2d 153-54 (applying Texas
Rule of Evidence 702); Blan v. Ali, 7 S.W.3d 741, 746 (Tex. App.-Houston [14th Dist.]
1999, no pet.) (holding, in an interpretation of chapter 74's predecessor, that the focus of
a trial court's inquiry regarding medical expert qualifications should not be on the defendant
physician's area of expertise, but on the condition involved in the claim). Therefore, a
medical expert from one specialty may be qualified to testify if he has practical knowledge
of what is customarily done by practitioners of a different speciality under circumstances
similar to those at issue in the case. See Keo v. Vu, 76 S.W.3d 725, 732 (Tex.
App.-Houston [1st Dist.] 2002, pet. denied). If the subject matter is common to and
equally recognized and developed in all fields of practice, any physician familiar with the
subject may testify as to the standard of care. Id.; Blan, 7 S.W.3d at 745 (noting that "[t]he
Texas Supreme Court has made it clear that if a subject of inquiry is substantially
developed in more than one field, a qualified expert in any of those fields may testify").

C. Analysis

 According to his curriculum vitae, Martin was board certified in radiology in 1980. 
He has training and experience in the following "interventional procedures":

percutaneous angioplasty, embolizations, IVC filter placement, retrieval of
foreign bodies, CT/US guided biopsies, percutaneous abscess drainages,
perc. antegrade biliary drainage, dilation of biliary and ureteral
stenosis/obstructions, perc. nephrostomies, thrombolysis, etc.


In his affidavit, Martin asserts that he has:

. . . knowledge of the accepted standards of medical care for the diagnosis,
prevention, care, treatment and cure of knee degeneration and the
diagnosis, prevention, care, treatment and cure of knee replacement by
virtue of my education, training and experiences in treating patients who
sustained knee injuries and who had knee degeneration either due to natural
processes such as osteoarthritis, or due to the effect of their injuries.


Carreras argues that Martin's curriculum vitae "blatantly contradicts" his report's assertion
that he has "knowledge" of the accepted standard of medical care for knee replacement
procedures and that Martin's report is conclusory in its assertion of "knowledge" of the
subject matter in question. We agree.

 The specific issues raised in Trevino's suit center on the surgical skill and post-operative care that Carreras rendered. In order to satisfy section 74.401(c)'s medical
expert qualification requirement, and thereby constitute an adequate report, Trevino had
to demonstrate that Martin had "substantial training or experience" in total knee
replacement surgery and the post-operative care of such a procedure. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.401(c). Besides summarily asserting such "knowledge," Martin's
report and curriculum vitae does not demonstrate how he gained the requisite experience
or training to satisfy the statute's requirement. See Ehrlich v. Miles, 144 S.W.3d 620, 625-26 (Tex. App.-Fort Worth 2004, pet. denied) (affirming, under chapter 74's predecessor,
a trial court's ruling that an expert report drafted by a neurologist did not demonstrate his
qualification to opine on the standard of care rendered by a plastic surgeon during a face
lift and cheek implant procedure); see also Garcia v. Rodriguez, No. 13-05-00747-CV,
2007 WL 2442349, at **3-4 (Tex. App.-Corpus Christi Aug. 30, 2007, pet. denied) (memo.
op.) (affirming, under chapter 74's predecessor, a trial court's ruling that an expert report
drafted by a plastic and reconstructive surgeon who stated that he had treated burn victims
did not demonstrate his qualification to opine on the standard of care rendered by a
pulmonologist to a burn victim); Miranda v. Martinez, No. 13-06-00386-CV, 2007 WL
687001, at *3 (Tex. App.-Corpus Christi Mar. 8, 2007, pet. denied) (memo. op.) (reversing
a trial court's ruling that an expert report drafted by an obstetrician and gynecologist
demonstrated that he was qualified to opine on another OBGYN's allegedly negligent act
of leaving a sponge in a patient after a C-section because the proffered expert "simply
inform[ed] the trial court that [he] was a doctor with a specialty in either gynecology or
obstetrics (or both) [and] did not address any of the factors that ultimately determine
whether one is a qualified expert--i.e., knowledge, skill, experience, training, and
education.").

 We hold that Martin's report is inadequate because it does not demonstrate that he
is qualified to render an expert medical opinion in this case and the trial court abused its
discretion by not granting Carreras's motion to dismiss. Accordingly, Carreras's sole issue
is sustained.

III. Conclusion

 We reverse the trial court's order denying Carreras's motion to dismiss and remand
this case to the trial court to consider whether to grant Trevino a thirty-day extension to file
an adequate expert report. (1)

 ROGELIO VALDEZ

 Chief Justice

 


Opinion delivered and filed this

25th day of August, 2009. 
1. The supreme court has held that section "74.351's plain language permits one thirty-day extension
when the court of appeals finds deficient a report that the trial court considered adequate." Leland v. Brandal,
257 S.W.3d 204, 207 (Tex. 2008). Accordingly, the trial court should have an opportunity to consider granting
Trevino an extension to cure the deficiencies detailed in this opinion.