

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00552-CV

**H.E.B. GROCERY COMPANY, LP**,
Appellant

v.

Rogelio **LOPEZ**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-11065
Honorable Laura Salinas, Judge Presiding

### OPINION ON APPELLANT'S MOTION FOR REHEARING

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 7, 2014

AFFIRMED

The motion for rehearing filed by appellant HEB Grocery Company, LP is denied.  This court's opinion and judgment dated February 19, 2014 are withdrawn and this opinion and judgment are substituted to make a clarification.

In the underlying pharmacy malpractice case, HEB Grocery Company, LP challenged the expert report of Dr. John W. Meyer, M.D. filed by Rogelio Lopez and moved to dismiss the case. The trial court denied HEB's motion to dismiss, and this interlocutory appeal followed.  On appeal,

HEB argues the trial court abused its discretion in denying the motion to dismiss because (1) Meyer was not qualified to render an expert report, and (2) Meyer's expert report failed to adequately explain the causal connection between the alleged breach of the standard of care and Lopez's injuries. We affirm the judgment of the trial court.

## BACKGROUND

On July 9, 2010, Lopez went to an HEB pharmacy to fill his prescription for Vytorin, a medication used to treat high cholesterol. HEB misfilled the prescription, and instead provided Lopez with Soma, a muscle relaxant. Although the prescription container was labeled Vytorin, it actually contained Soma 250 mg tablets. The error was discovered after Lopez was taken to the emergency room on August 29, 2010. Lopez, who was 76 years old and lived alone, was found at his home covered in his own waste. He had fallen three days earlier and was unable to get back up. As a result of the fall, he severely injured his wrists, knees, elbow, and back. At the hospital, he was treated for extreme dehydration and rhabdomyolysis. Lopez subsequently developed carpal tunnel syndrome as a result of the fall and underwent wrist surgery in February 2011. Except for the surgery, Lopez was at all times under the care of his treating physician, Dr. John W. Meyer, a board certified family practitioner.

Lopez sued HEB for negligence, alleging the mistaken ingestion of the muscle relaxant Soma during the period of July 9 to August 26 caused his fall and partial paralysis and resulting injuries. Lopez served HEB with the expert report of Dr. Diane Ginsburg. Ginsburg's report dealt exclusively with the applicable standard of care of a pharmacist and the breaches of care committed by HEB's pharmacist. HEB did not object to Ginsburg's report. Lopez also served HEB with the report of Dr. John W. Meyer, which addressed the causal relationship between the failure in the standard of care of HEB's pharmacist and the injuries, harm and damages suffered by Lopez. HEB

objected to Meyer's report, and the trial court ordered that the report be supplemented. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (West Supp. 2013).

Thereafter, Lopez served HEB with the supplemental report of Dr. Meyer. HEB again objected to Meyer's report, arguing that Meyer was not qualified to render an expert report, and that the report failed to adequately explain the causal connection between the alleged breach and Lopez's damages. After a hearing, the trial court denied HEB's motion to dismiss.

On appeal, HEB asserts the trial court erred in denying its motion to dismiss because Meyer's expert report fails to meet the requirements of Texas Civil Practice and Remedies Code Chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2013).

## ANALYSIS

We review a trial court's ruling on a motion to dismiss a case under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding principles and rules. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). Though we may not substitute our judgment for that of the trial court in reviewing factual matters or matters committed solely to the trial court's discretion, the trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992). Thus, the trial court's failure to apply or analyze the law correctly is an abuse of discretion. *Id.* at 840.

Pursuant to section 74.351 of the Civil Practice and Remedies Code, a plaintiff who brings a health care liability claim is required to file an expert report that contains "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2013); *HEB Grocery Co., L.L.P. v. Farenik*, 243 S.W.3d 171, 173 (Tex. App.—San Antonio 2007, no pet.). The report serves a two-fold purpose: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Farenik*, 243 S.W.3d at 173. When a timely-filed report is found to be deficient, one thirty-day extension may be granted to allow the claimant to cure the deficiency. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). If the deficiency is not cured, the case must be dismissed upon proper motion. *Id*. § 74.351(b)(2), (c) (West Supp. 2013). In determining whether the report constitutes a good faith effort, the trial court's inquiry is limited to "the four corners" of the report. *Palacios*, 46 S.W.3d at 878.

The report need not marshal all of the plaintiff's proof, but must include the expert's opinion on each of the elements identified in the statute: standard of care, breach, and causation. *Id.*; *Farenik*, 243 S.W.3d at 174. A plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The report can be informal in that the information in the report does not have to meet the same requirement as the evidence offered in a summary judgment proceeding or at trial. *Id.* On the other hand, "it is not enough that the expert report 'provided insight' about the plaintiff's claims. Rather, to constitute a good-faith effort to establish the causal-relationship element, the expert report must fulfill *Palacios*'s two-part test." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (internal citations omitted). The expert must explain the basis of his statements to link his conclusions to the facts. *Id.*

### Expert Qualification

HEB first asserts Meyer's report did not establish his qualifications to testify regarding the cause of Lopez's injuries. Specifically, HEB argues that Meyer's report fails to establish that he is qualified to testify that Lopez's ingestion of Soma caused the injuries alleged.

- 4 -

A person may qualify as an expert witness on the issue of whether a health care provider departed from accepted standards of care only if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b) (West 2011).

Here, Meyer's curriculum vitae shows that he has been practicing medicine since 1975. He is board certified in family practice. Meyer has been Lopez's treating physician for many years. In his five-page report, Meyer states that he has prescribed Vytorin and Soma and has personal knowledge of the side effects and the risks associated with both drugs. Meyer further states that he has an understanding of the side effects of both drugs on a patient with preexisting conditions. He continues:

> [T]he known side effects of SOMA include the following: hypotension, drowsiness, extreme weakness or lack of coordination, feeling light-headed, fainting, agitation and confusion. I have personal knowledge of these side effects based on my experience in prescribing SOMA to my patients during my 37 plus years of family medicine practice as well as my reading of the drug manufacturers insert. . . . As a result, I am of the professional opinion that Rogelio Lopez's fall and subsequent inability to rise off the floor for a period of three days was proximately caused by his unintentional ingestion of SOMA.

HEB argues that while Meyer's opinion demonstrates a general familiarity with Soma's side effects, nothing in his report indicates that he has any specific experience, background, or training in the pharmacological issues pertinent to Soma, i.e., dosaging, administration, mechanism of action, half-life, etc. HEB asserts that Meyer also failed to state his qualifications to opine that Lopez's ingestion of Soma caused prolonged partial paralysis or a fall sufficient to result in carpal tunnel syndrome.

HEB maintains that the *Collini* case is instructive. *Collini v. Pustejovsky*, 280 S.W.3d 456 (Tex. App.—Fort Worth 2009, no pet.). In *Collini*, a patient sued her physician, alleging that the physician's continued prescription of the drug Reglan caused her to develop tardive dyskinesia, a condition that causes involuntary movement of the limbs, face, or tongue. *Id*. at 459-60. The patient served the physician with the expert report of Paul Haberer, D.O., a board-certified family practice physician who also held a bachelor's degree in the field of pharmacy. *Id*. at 460. In his report, Haberer opined that because tardive dyskinesia is a known risk of taking Reglan, as has been disclosed by the drug's manufacturer, the standard of care requires that a prescription for the drug be limited to no more than twelve weeks, and that patients taking Reglan should be closely monitored for symptoms of any moving disorder. *Id*. at 460. Haberer opined that the physician's failure to do so was a direct and proximate cause of the patient's tardive dyskinesia. *Id*. at 460 n.3. On appeal, the court determined that the trial court erred in denying the physician's motion to dismiss because the report did not demonstrate that Haberer was qualified to testify with regard to causation. *Id*. at 466.

We find *Collini* to be distinguishable. The *Collini* court held that Haberer's report was insufficient because it did not "indicate that the doctor had any specific knowledge, experience, education, or training in assessing the prolonged use of Reglan and tardive dyskinesia." *Id*. at 465-66. To the contrary, the report "only generally state[d] that he has knowledge applicable to 'primary care and family medicine.'" *Id*. at 466. Here, in contrast, Meyer's report states that he has personal knowledge of Soma and its side effects and risks. Meyer has prescribed Soma in his medical practice. Unlike Haberer, who professed to be familiar with Reglan only through the manufacturing insert, Meyer has shown personal experience with the drug at issue. *Id*. at 460. Accordingly, we do not find *Collini* controlling, and conclude that Meyer's personal knowledge of Soma and its side effects is sufficient to allow him to opine on causation in this instance.

We also disagree with HEB's assertion that Meyer was not qualified to testify that Lopez's ingestion of Soma caused his inability to rise off of the floor for a period of three days, or a fall sufficient to result in carpal tunnel syndrome. In his report, Meyer explains how the fall and subsequent weakness caused by Lopez's unintentional ingestion of Soma caused him to suffer trauma to his hands and wrists. Specifically, Meyer states that the hand and wrist trauma resulted from Lopez using his hands to crawl around on the floor during the three days he was immobilized. Also, Lopez related to Meyer that he fell "hard" on his hands on the occasion in question. Because Meyer's report demonstrates his familiarity with the issues involved in the underlying claim, we conclude Meyer was qualified to opine on whether HEB's negligence in misfilling the prescription caused Lopez's injuries.

*Causation*

HEB next argues that Meyer's report fails to explain how Lopez's ingestion of Soma caused his fall, three-day partial paralysis, and resulting injuries. Specifically, HEB argues that Meyer's report fails to establish the rate, quantity and amount of Soma Lopez ingested before falling or why the ingestion of an unstated and unknown quantity of Soma led to a fall and three-day partial paralysis.

Lopez was not required to present evidence in the report as if he were actually litigating the merits of the case. Rather, Lopez was merely required to provide an expert report, or reports, that linked HEB's negligent dispensing of the wrong drug with Lopez's injuries. *Farenik*, 243 S.W.3d at 176; *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.) ("[C]ausation is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and without which the harm would not have occurred."). We conclude Meyer's report did link Lopez's fall and resulting injuries to the ingestion of Soma.

In his report, Meyer states:

> [T]he known side effects of SOMA include the following: hypotension, drowsiness, extreme weakness or lack of coordination, feeling light-headed, fainting, agitation and confusion. I have personal knowledge of these side effects based on my experience in prescribing SOMA to my patients during my 37 plus years of family medicine practice as well as my reading of the drug manufacturers insert. . . . As a result, I am of the professional opinion that Rogelio Lopez's fall and subsequent inability to rise off the floor for a period of three days was proximately caused by his unintentional ingestion of SOMA.

Meyer continues:

> [I]t is my opinion, based upon reasonable medical probability, that Rogelio's ingestion of SOMA in the days leading up to the August 2010 fall was the proximate cause of Rogelio's fall which resulted in his development of carpal tunnel syndrome, rhabdomyolysis, and dehydration. In my professional medical opinion, Rogelio's ingestion of SOMA proximately not only caused him to fall, but also caused him to be unable to get back up. I am basing my opinion on my training, education, over 37 years of clinical medical practice, and my specific care and treatment of Rogelio Lopez for the injuries he sustained.

When read in context of the entire report, we cannot conclude that Meyer addressed causation in a conclusory fashion. *See Philipp v. McCreedy*, 298 S.W.3d 682, 690 (Tex. App.—San Antonio 2009, no pet.); *Benavides v. Garcia*, 278 S.W.3d 794, 799 (Tex. App.—San Antonio 2009, pet. denied). Indeed, Meyer's report provides more than a bare assertion that the ingestion of Soma caused Lopez's injuries. Meyer first states that instead of taking Vytorin, as prescribed, Lopez ingested Soma 250 mg tablets from early July 2010 until August [26,] 2010. Meyer next states that the side effects of Soma include low blood pressure, drowsiness, extreme weakness or lack of coordination, feeling light-headed, and fainting. He then explains that Lopez's preexisting conditions, including Type 2 Diabetes, ethanol and tobacco abuse, and hypertension, made him more susceptible to the effects of Soma. Meyer finally concludes, based on his review of Lopez's medical records and his personal knowledge and treatment of Lopez before and after the fall, that the most likely cause of the fall was the ingestion of Soma. Accordingly, Meyer's report sufficiently explains how Lopez's ingestion of Soma caused Lopez's fall.

HEB similarly contends that Meyer's report is conclusory with regard to the cause of Lopez's carpal tunnel syndrome. We again disagree. When Lopez was admitted to the hospital after his fall, he showed abrasions on both elbows. In his report, Meyer specified that the hand and wrist trauma suffered by Lopez after the fall resulted from Lopez falling "hard" on his hands and using his hands to crawl around on the floor during the three days he was immobilized. Meyer further stated that carpal tunnel syndrome can be caused by trauma to the hand and wrist area, such as compression of the median nerve in the carpal tunnel space. Given this explanation, we conclude Meyer's report sufficiently links Lopez's ingestion of Soma to his development of carpal tunnel syndrome. *See Patel v. Williams ex rel. Estate of Mitchell*, 237 S.W.3d 901, 906 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding medical expert report that opined that defendant physician's decision to treat patient's dementia with "the wrong drug" began a "chain of events" ultimately culminating in patient's death was sufficient to address the element of causation under section 74.351).

Finally, HEB argues that Meyer's report fails to rule out other plausible or suspected causes of Lopez's fall and resulting injuries. In his report, Meyer states that Lopez's past medical history includes Type 2 Diabetes, ethanol abuse, tobacco abuse, hypertension, and a previous episode of shingles. Meyer personally treated Lopez for all of the above conditions. HEB asserts that when a claimant suffers from a pre-existing condition, the physician must rule out all of the pre-existing conditions as a cause of the injuries. We disagree. "Nothing in section 74.351 suggests the preliminary report is required to rule out every possible cause of the injury, harm, or damages claimed, especially given that section 74.351(s) limits discovery before a medical expert's report is filed." *Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace*, 278 S.W.3d 552, 562-63 (Tex. App.—Dallas 2009, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s) (West Supp. 2013). The report is not required to meet the same evidentiary requirements as in a summary

judgment proceeding or at trial; rather, section 74.351 merely requires the medical expert's report to provide a fair summary of the medical expert's opinions regarding the causal relationship between the failure of the health care provider to provide care in accord with the pertinent standard of care and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 879.

In any event, we conclude that Meyer did in fact rule out Lopez's pre-existing conditions as the cause of his fall and resulting inability to get up. Meyer ruled out Lopez's pre-existing conditions as well as any previous hand or wrist injuries as the proximate cause of the carpal tunnel syndrome. Similarly, Meyer concluded that none of Lopez's pre-existing conditions could have caused his dehydration, and instead noted that the three-day period in which he did not receive any food or water caused the dehydration in all reasonable medical probability. Meyer also stated that he believed Lopez's rhabdomyolysis was caused by "his fall and subsequent three days attempting to move about and get up from the floor, along with dehydration . . . ." Meyer further concluded that none of Lopez's pre-existing conditions could have proximately caused his rhabdomyolysis. Finally, Meyer noted in his report that Soma can cause hypotension, which can lead to fainting episodes. He explained, however, that fainting due to hypotension would not lead to continued weakness, and specifically stated that "there is no medical evidence that Rogelio's fall *and* subsequent weakness was triggered by a fainting episode resulting from low blood pressure." (Emphasis added). Through differential diagnosis, his review of the medical records, and his personal treatment of Lopez, Meyer ultimately ruled out a fainting episode caused by Lopez's pre-existing conditions. Accordingly, we conclude that Meyer's report sufficiently explains how Lopez's ingestion of Soma caused his injuries.

## CONCLUSION

The two-fold purpose of an expert report under section 74.351 is to inform the defendant of the specific conduct the plaintiff has called into question, and to provide a basis for the trial court to conclude that the claims have merit. *See Palacios*, 46 S.W.3d at 878-79. Pursuant to this standard, we hold Meyer's report was sufficient to notify HEB regarding the specific conduct complained of, and provided a basis for the trial court to conclude the claims have potential merit. Therefore, we conclude the trial court did not act in an arbitrary or unreasonable manner, without reference to guiding rules or principles, when it determined Meyer's report was sufficient to establish his qualifications and to provide a fair summary on the issue of causation. We overrule HEB's issue on appeal and affirm the trial court's order.

Rebeca C. Martinez, Justice