**Randolph A. LOPEZ, M.D., Appellant,**

v.

**Johanna BROWN, Appellee.**

**No. 14–10–01144–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 11, 2011.

Angela Marie Nolan, Richard M. Law, Stephanie Anne Sanders, Houston, for appellant.

Scot Graves Doyen, Shelton Jon McDonald, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

## OPINION

ADELE HEDGES, Chief Justice.

In this accelerated interlocutory appeal, appellant Randolph A. Lopez, M.D. challenges the trial court's denial of his second motion to dismiss based on an alleged un-

timely-filed and insufficient second expert report in a medical malpractice suit. We affirm.

## BACKGROUND

Dr. Lopez operated on one of Johanna Brown's fingers in November 2008. Brown sued Dr. Lopez in March 2010, alleging medical malpractice and claiming damages resulting from Dr. Lopez's alleged negligence in performing the surgery.[1] Dr. Lopez answered with a general denial. Brown timely filed an expert report prepared by William C. Pederson, M.D., with his curriculum vitae attached (the "Pederson report"). *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (West 2011). Dr. Lopez objected to the sufficiency or adequacy of the Pederson report and filed a motion to dismiss.[2] Brown responded, asserting that Pederson's report was sufficient and, in the alternative, if the trial court found the report deficient, requested a 30–day extension in which to file an amended report.

The trial court heard Dr. Lopez's motion to dismiss on August 23, 2010. No record was made of this hearing. The trial court signed (a) an order granting the 30–day extension on October 18, 2010 and (b) an order denying Dr. Lopez's first motion to dismiss on November 2, 2010. The order granting the 30–day extension has the following language crossed out: "The Court, having read the pleadings and considered the motion and response if any, is of the opinion that the Plaintiff's Expert Report

of William C. Pederson, M.D., dated July 7, 2010, is insufficient under CPRC § 74.341 because elements of the Report are found deficient."[3]

On October 5, 2010, Dr. Lopez filed a second motion to dismiss. In this motion, Dr. Lopez asserted that Brown had not complied with the statutory 30–day extension to serve either an amended report from Dr. Pederson or a report from a new expert. *See id.* § 74.351(c). This motion to dismiss was set for an oral hearing in late October. Meanwhile, on October 6, 2010, Brown filed and served an expert report from John J. Faillace, M.D., with curriculum vitae attached (the "Faillace report"). Dr. Lopez supplemented his second motion to dismiss with objections to the Faillace report.

The trial court heard Dr. Lopez's second motion to dismiss and objections to the Faillace report on October 25, 2010. The trial court overruled Dr. Lopez's objections to the Faillace report and denied his second motion to dismiss, signing an order to this effect on November 2, 2010. Dr. Lopez timely filed a notice of accelerated appeal from the denial of this motion to dismiss on November 18, 2010.

## ANALYSIS

On appeal, Dr. Lopez asserts that the trial court abused its discretion by (1) denying his second motion to dismiss because the Faillace report was not timely filed, and (2) overruling his objections to the

---

1. Brown originally sued Dr. Lopez and the Brown Medical Center, Inc. f/k/a Surgeon's Management, Inc. a/k/a Brown Hand Center ("Brown Medical"). She subsequently non-suited her claims against Brown Medical, and Dr. Lopez remained the only defendant in the case.

2. We note that, at the time Brown filed the Pederson report, Brown Medical had not yet released copies of her medical records to her.

3. A trial court may grant a 30–day extension only if it finds the report deficient. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c). However, the issue of the trial court's erroneous granting of a 30–day extension to a report it allegedly found sufficient is not before us in this appeal.

Faillace report because it was not sufficient as to causation.

## A. Standard of Review and Applicable Law

A medical-malpractice plaintiff must timely serve on each defendant or each defendant's attorney one or more expert reports that set out (1) the applicable standard of care, (2) the manner in which the defendant's care failed to satisfy that standard, and (3) the causal relationship between the defendant's failure and the injury, harm, or damages claimed. *See id.* § 74.351(a), (r)(6). Generally, if the plaintiff fails to serve an expert report within the statutory 120–day deadline, the trial court must dismiss the lawsuit with prejudice. *See id.* § 74.351(a), (b). However, the trial court may grant one 30–day extension to the claimant to cure a deficiency in a timely-filed report. *See id.* § 74.351(c). Where, as here, the claimant does not receive notice of the court's ruling granting the extension until after the 120–day deadline has passed, "the 30–day extension *shall* run from the date the plaintiff first received the notice." *Id.* (emphasis added).

We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Group v. Vicento,* 164 S.W.3d 724, 727 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Larson v. Downing,* 197 S.W.3d 303, 304–05 (Tex.2006) (per curiam); *Mem'l Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 757 (Tex.App.-Houston [14th Dist.] 2007, no pet.). When reviewing a matter committed to the dis-

cretion of the trial court, a court of appeals may not substitute its judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

## B. Timeliness of Faillace Report

In his first issue, Dr. Lopez asserts that the Faillace report was untimely because it was not served within 30 days following the August 23, 2010 hearing on the Pederson report. He contends that the plain language of the statute requires that this extension begins running from the date the plaintiff first received notice. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c). We agree that the plain language of the statute provides that the 30–day extension runs from the date the plaintiff first received notice of the court's granting of the extension. *See id.*

However, Dr. Lopez has not established that Brown received notice of the trial court's grant of the extension on August 23, 2010 because, as noted above, no record of this hearing was taken. During the October 25, 2010 hearing on the adequacy of the Faillace report, the trial court recalled having granted Brown a 30–day extension to "clean-up" the Pederson report if she so desired. Even if the judge's oral statement of recollection could be considered the functional equivalent of the record of the actual hearing itself, the oral pronouncement from the bench is inadequate to constitute notice of a 30–day extension under section 74.351(c). Section 51.014 of the Civil Practice & Remedies Code provides that "an appeal may not be taken from an *order* granting an extension under Section 74.351." *Id.* § 51.014(a)(9) (West 2008) (emphasis added). Accordingly, we conclude that the notice provided for in section 74.351(c) must be in the form of

a written order,[4] rather than a trial court's mere oral pronouncement from the bench. *Cf. Constancio v. Bray*, 266 S.W.3d 149, 160 n. 4 (Tex.App.-Austin 2008, no pet.) ("The statute plainly provides that when notice of the court's *order* granting an extension is received by a plaintiff outside of the 120–day period for serving reports, the 30 days runs from the date the plaintiff receives notice of the court's *order* granting the extension." (emphasis added)). This requirement eliminates any confusion created by a trial court's erroneous oral statements such as occurred here and clearly establishes the starting date for the 30–day extension provided by section 74.351(c).[5]

In sum, the only conclusive evidence in our record reflecting the date that Brown received notice of the trial court's decision to grant the extension is the trial court's order signed on October 18, 2010. Because this order was signed after Brown filed the Faillace report, we conclude that this report was timely. Accordingly, we overrule Dr. Lopez's first issue.

## C. Adequacy of Faillace Report

Dr. Lopez asserts in his second issue that the Faillace report "is insufficient to identify the causal nexus between Dr. Lopez's alleged negligence and each of [Brown]'s claims for damages set forth in her Original Petition." In his report, Dr. Faillace stated in pertinent part as follows:

Multiple clinic follow-up notes indicate Ms. Brown's post operative course was marked with pain much greater than expected, if the surgery had been successful. On January 13th, 2009 she was noted to have areas of necrosis to the grafts and drainage not felt to be infection. . . . On February 23rd, 2009 Dr. Lopez's entire exam note is, "closing defect no purulence nail curling" and his plan was for Ms. Brown to follow up in six months. On March 23rd, 2009 she returned to Dr. Lopez with exposed bone. He scheduled further surgery to resect bone and obtain coverage.

She cancelled this surgery and sought treatment with Dr. Mark Henry. He then referred her to Dr. Pederson in San Antonio who then performed a complete sympathectomy in the wrist and hand. After this she improved greatly.

Although his experience and training may have suggested a digital sympathectomy alone is sufficient for a typical Raynaud's with an isolated digit involved, when Dr. Lopez got the results of the MRA, he should have planned a more thorough sympathectomy such as was done later by Dr. Pederson. Ms. Brown's case is complicated by the scleroderma and [she] was having symptoms throughout the whole hand. Having exhausted the non-surgical intervention, the standard of care would be to perform a complete sympathectomy, not the isolated digital one performed by Dr. Lopez. . . . It was NOT the correct pro-

---

**4.** Further, a judgment or order that is rendered in writing and signed by the trial judge becomes the official judgment of the court. *E.g., Harrington v. Harrington*, 742 S.W.2d 722, 724 (Tex.App.-Houston [1st Dist.] 1987, no writ). Recitals in a judgment or signed order of the court control over conflicting recitals in either the reporter's or clerk's record. *See Hamilton v. Empire Gas & Fuel Co.*, 134 Tex. 377, 384–85, 110 S.W.2d 561, 566 (1937) ("[D]ocket entries, affidavits, and other like evidence, can neither change nor enlarge judgments or orders as entered in the minutes of the court."); *In re JDN Real Estate–McKinney L.P.*, 211 S.W.3d 907, 914 n. 3 (Tex.App.-Dallas 2006, orig. proceeding) (holding that written order controlled over conflicting oral pronouncement); *Harrington*, 742 S.W.2d at 724 (resolving conflict between judgment and docket entry in favor of judgment).

**5.** See footnote 3, *supra.*

cedure for this patient. As such, the standard of care was NOT met.

Such a limited sympathectomy failed to improve her circulation and in this respect, being the wrong procedure, is the proximate cause of Ms. Brown's progression of symptoms, partial loss of digits, and difficulty in prevention/clearing infection. By performing an inadequate surgery initially she required several more surgeries. Additionally the skin grafting procedure was so poorly performed that a second harvest needed to be taken from the wrist. These were doomed to failure as there was not adequate reperfusion from the original procedure, the isolated digital sympathectomy. There also appears to be some inconsistencies in the Brown Hand [C]enter's records but this may just be due to poor record keeping.

In summary, as a fellowship trauma hand surgeon I am experienced with Ms. Brown's conditions and the difficult nature of successful treatment. I have performed a complete sympathectomy in Raynaud's patients with success. Based on my training and experience, I am familiar with the standard care in treating these patients. Dr. Lopez did not meet the standard of care in treating Ms. Brown. This failure resulted in a protracted and painful course as well as greater partial loss of digits. She only got releif and resolution after a complete sympathectomy and distal amputation....

Dr. Faillace details the injuries sustained by Brown while under the care and supervision of Dr. Lopez. He specifically links Dr. Lopez's deviation from the applicable standard of care to Brown's pain as noted in Brown's medical records, the existence of necrosis in her fingers and hands, and her partial loss of fingers on her dominant hand. Dr. Faillace's report further links the requirement of additional surgeries to the fact that Dr. Lopez performed an improper and inappropriate initial procedure on Brown. His report provides a fair summary of the damages attributable to Dr. Lopez's deviation from the standard of care required by section 74.351(r)(6). *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6) (defining an "expert report" as a written report by an expert providing a fair summary of the expert's opinion regarding the applicable standard of care, the manner in which the care rendered by the physician failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed).

Furthermore, under section 74.351(a), the obligation to serve an expert report meeting section 74.351(r)(6)'s requirements exists with respect to "each physician or health care provider against whom a liability claim is asserted." *Id.* § 74.351(a). The word "claim" is defined to mean "a health care liability claim." *Id.* § 74.351(r)(2). The phrase "health care liability claim" is defined as a "cause of action against a ... physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care...." *Id.* § 74.001(a)(13). In this context, the term "cause of action" refers to underlying facts giving rise to one or more bases for suing. *See In re Jorden,* 249 S.W.3d 416, 421–22 (Tex.2008) (orig. proceeding).

We have previously examined the statutory language and determined that as long as the claimant timely serves an expert report that adequately addresses at least one liability theory against a defendant health care provider, the suit can proceed without the need for every liability theory to be addressed in the report. *Baylor Coll. of Med. v. Pokluda,* 283 S.W.3d 110, 123 n. 3 (Tex.App.-Hous-

ton [14th Dist.] 2009, no pet.) (declining to address adequacy of report concerning pre-surgery breaches of standard of care when expert report adequately addressed breaches occurring during surgery); *see also McGraw–Wall v. Giardino,* No. 14–10–00838–CV, 2011 WL 1419608, at *4 (Tex.App.-Houston [14th Dist.] Apr. 14, 2011, pet. filed) (mem. op.) ("Therefore, although the amended expert report here does not address all of Giardino's alleged damages, it adequately addresses at least one liability theory and that satisfies the statutory requirements."); *Arboretum Nursing and Rehab. Ctr. of Winnie, Inc. v. Isaacks,* No. 14–07–00895–CV, 2008 WL 2130446, at *6 (Tex.App.-Houston [14th Dist.] May 22, 2008, no pet.) (mem. op.) (holding expert report was sufficient despite the fact that the report did not address each detail of the plaintiff's petition).[6] In short, although the Faillace report does not address all of Brown's alleged damages, it adequately addresses at least one liability theory, which satisfies the statutory requirements. Accordingly, we overrule Dr. Lopez's second issue.

### CONCLUSION

Under these circumstances, Dr. Lopez has failed to establish reversible error. Accordingly, we have overruled Dr. Lopez's challenges to the trial court's order. Having overruled each of Dr. Lopez's issues, we affirm the trial court's order denying his second motion to dismiss.

---

6. Although this court has reached this conclusion, we note that the Supreme Court of Texas has not directly decided whether an expert report must set out each liability theory within a cause of action, and there is a split of authority amongst the intermediate courts of appeals regarding this matter. *See Certified EMS, Inc. v. Potts,* 355 S.W.3d 683, 694–95, (Tex.App.-Houston [1st Dist.] 2011, no pet. h.) (op. on reh'g) (noting split of authority and collecting cases establishing split).