Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-12-00098-CV

**LAUREL RIDGE TREATMENT CENTER**,
Appellant

v.

Merardo P. **GARCIA** and Carol Garcia
on Behalf of The Estate of Steven Santos Garcia, Deceased,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-04751
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by: Catherine Stone, Chief Justice

Sitting: Catherine Stone, Chief Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice

Delivered and Filed: August 29, 2012

AFFIRMED

This is an accelerated, interlocutory appeal of the trial court's order denying Laurel Ridge Treatment Center's motion to dismiss. The motion to dismiss challenged the adequacy of the section 74.351 expert report filed in the underlying health care liability claim. Laurel Ridge contends the trial court erred in denying its motion because the appellees' expert report was insufficient with regard to the standard of care, breach, and causation elements of their cause of action. We affirm the trial court's order.

**BACKGROUND**

On February 16, 2010, Steven Garcia was involuntarily admitted to Laurel Ridge after he informed his mother that he wanted to kill himself and police located him at a Wal-Mart with recent purchases of a knife and razor blades. The police took Garcia to an emergency room where he told the mental health evaluator that he intended to kill himself and had a plan for doing so.

On February 17, 2010, Dr. Alan Lloyd conducted a psychiatric evaluation of Garcia, concluded Garcia was suffering from suicidal ideation, and diagnosed him with severe major depressive disorder and anxiety disorder. Laurel Ridge staff observed that Garcia was isolating himself and not attending group therapy sessions.

On February 18, 2010, Garcia attempted to cut his wrists with a piece of paper during a group therapy session. He then stormed out of the session. Garcia was directed to a seclusion room where he began violently hitting the wall with his fist, causing his wrist to become swollen and red.

On February 19, 2010, Garcia informed Dr. Lloyd of a new plan to kill himself. Laurel Ridge staff applied for a temporary commitment order, opining that Garcia was likely to cause serious harm to himself and continued to express suicidal ideation on a daily basis.

On February 20, 2010, Garcia remained isolative, irritable, and anxious. Garcia denied suicidal ideation in a self-report.

On February 21, 2010, Laurel Ridge staff described Garcia as having symptoms of depression and anxiety. Garcia appeared sullen in a group therapy session before abruptly leaving the session. Several hours later, Garcia attempted suicide by hanging himself with a

sheet in the bathroom of his room. He was found unresponsive, without a pulse or respirations, and subsequently died.

### STANDARD OF REVIEW AND EXPERT REPORT REQUIREMENTS

We review the trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Stephanie M. Phillipp, P.A. v. McCreedy*, 298 S.W.3d 682, 686 (Tex. App.—San Antonio 2009, no pet.). An abuse of discretion occurs when a trial court acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *McCreedy*, 298 S.W.3d at 686.

A plaintiff asserting a health care liability claim is required to file an expert report containing "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011). To comply with the statutory requirements, the report need only provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). The expert report is required to be adequate with regard to only one liability theory within a cause of action in order for the claimant to proceed with the entire cause of action against the defendant. *Nexion Health at Duncanville, Inc. v. Ross*, No. 05-11-01687-CV, 2012 WL 2783166, at *7 (Tex. App.—Dallas July 10, 2012, no pet. h.); *Lopez v. Brown*, 356 S.W.3d 599, 604-05 (Tex. App.—Houston [14th Dist.] 2011, no pet.), *cf. Pedroza v. Toscano*, 293

S.W.3d 665, 669 (Tex. App.—San Antonio 2009, no pet.) (testifying expert not limited to acts or theories of negligence mentioned in 74.351 report).

ANALYSIS

The expert report in the instant case addresses two separate liability theories alleged by the appellees: (1) Laurel Ridge was liable for breaching the standard of care applicable after Garcia abruptly left the group therapy session on February 21, 2010; and (2) Laurel Ridge was liable for breaching the standard of care applicable in providing a safe environment for patient care. With regard to the first liability theory, Laurel Ridge contends: (1) the report is conclusory; and (2) this court must consider the factual inconsistencies between the expert's report of the events that transpired on February 21, 2010 and the medical records' documentation of the events that transpired. With regard to the second liability theory, Laurel Ridge contends the expert report is conclusory. Because we conclude the trial court did not abuse its discretion in concluding the expert report satisfied the statutory requirements with regard to the second liability theory, we need not address whether the report was adequate regarding the appellees' first liability theory. *See Nexion Health at Duncanville, Inc.*, 2012 WL 2783166, at *7; *Lopez*, 356 S.W.3d at 604-05.

A.      Standard of Care

"The standard of care for a [treatment center caring for psychiatric inpatients with suicidal ideations] is what an ordinarily prudent [treatment center] would do under the same or similar circumstances." *Palacios*, 46 S.W.3d at 880. A fair summary of the applicable standard of care must "set out what care was expected but not given." *Id*. (internal citations omitted). We agree with the trial court that the expert report in this case provides such information.

The report states that the standard of care required Laurel Ridge to do the following:

> 3. Provide a safe environment for the patient, devoid of the means to commit suicide, access to a hidden area in which to commit suicide, and an unsupervised opportunity to commit suicide.

Thus, the report summarizes that the expected care was for Laurel Ridge to provide a safe environment. The report then describes the necessary components of such a safe environment as including: (1) no means to commit suicide; (2) no hidden area where suicide could be committed; and (3) no opportunity to commit suicide. Because the report provided a fair summary of the care that was expected, the trial court did not abuse its discretion in finding the report constituted a good faith effort to provide a fair summary of the applicable standard of care. *See id.*

Laurel Ridge argues the expert report was required to detail the "exact steps" Laurel Ridge should have taken in providing a safe environment; however, the Texas Supreme Court does not require a report to detail "exact steps." Instead, an expert report is required to inform a defendant of the "specific conduct the plaintiff has called into question." *Id.* at 879. The expert report in the instant case satisfied that requirement by informing Laurel Ridge of the "specific conduct" the appellees have called into question, *i.e.*, access to the sheet and to a hidden, unsupervised area, *i.e.*, the bathroom.

B. Breach

With regard to the breach element, a report is not conclusory if the expert explains the basis of his statements and links the conclusions to the facts. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). In this case, the expert explained the basis for his opinion that Laurel Ridge breached the applicable standard of care and linked his opinion to the facts.

The expert noted in his report, "The use of sheets and a bathroom door as a hanging platform in an area not under constant observation by staff is a common suicide scenario specifically addressed by JCAHO prior to the date of this tragic suicide." The expert then explained that Laurel Ridge permitted Garcia, a suicidal patient, to have access to the means he used to hang himself, *i.e.*, the sheets, thereby breaching the standard of care requiring it to provide a safe environment devoid of the means by which Garcia could commit suicide. Second, the expert explained that Laurel Ridge permitted Garcia access to a bathroom that was in a hidden, unsupervised area outside the line of sight of hospital staff, thereby breaching the standard of care requiring it to provide a safe environment devoid of hidden areas where suicide could be committed. Finally, the expert explained Laurel Ridge allowed Garcia sufficient opportunity to commit suicide by leaving him unsupervised in this hidden area for fifteen minute intervals, thereby breaching the standard of care requiring it to provide a safe environment devoid of the opportunity to commit suicide. Because the expert explained the basis for each of these three breaches of the applicable standard of care and linked his conclusions to the facts, the trial court did not abuse its discretion in finding the report provided a fair summary of the manner in which the expected care was not given in breach of the applicable standard of care. *See Palacios*, 46 S.W.3d at 880.

C.     Causation

Finally, with regard to the causation element, the expert again explained the basis for his opinions, stating:

> It is my opinion with reasonable medical certainty that [Laurel Ridge's] failure to provide a safe environment of care for Mr. Garcia gave him access to the means of hanging himself (sheets). But for his access to this means of suicide, Mr. Garcia would have been prevented from attempting suicide.

> It is my opinion with reasonable medical certainty that but for [Laurel Ridge's] allowing Mr. Garcia access to a hidden, unsupervised area (bathroom) outside of the line of sight of hospital staff, Mr. Garcia would have been prevented from attempting suicide.

Thus, the expert reasonably explained "how" Laurel Ridge's failure to provide a safe environment enabled Garcia to attempt suicide. *See Jelinek*, 328 S.W.3d at 539-40. Accordingly, the trial court did not abuse its discretion in finding that the expert report was not conclusory with regard to the causation element of the appellees' claim.

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice