Jarvis L. STEIN and Betty
L. Stein, Appellants,

v.

Joe B. KILLOUGH, Appellee.

No. 04–99–00805–CV.

Court of Appeals of Texas,
San Antonio.

March 28, 2001.

**38**

Darby Riley, Law Office of Darby Riley, San Antonio, for Appellant.

J.R. Schaub, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice PAUL W. GREEN, Justice KAREN ANGELINI, Justice.

KAREN ANGELINI, Justice.

Jarvis L. and Betty L. Stein appeal a declaratory judgment and permanent injunction prohibiting them from shortening a median on the street which runs along the boundary of their property and that of Joe Killough. The Steins raise two issues on appeal: that the trial court abused its discretion in issuing the permanent injunction and, that there was no evidence of imminent and irreparable harm which would justify issuing the injunction. We affirm the trial court's judgment.

### FACTUAL & PROCEDURAL BACKGROUND

San Antonio Ranch is a subdivision located in the extraterritorial jurisdiction of the City of San Antonio. Apacheria Street and Ranch Parkway, two roads in the subdivision, appear on a plat recorded in the Deed and Plat Records of Bexar County, Texas. The plat reflects that Sarlco, Inc., the original owner of the land, dedicated to the public's use "all streets,

alleys, parks, water courses, drains, easements and public places thereon shown for the purpose and consideration therein expressed." The plat also states specifically that "Green belt and median maintenance shall be provided by owner of green belts."[1] The recorded plat further reflects that the plat was approved by the City of San Antonio Planning Commission in 1980 and by the Bexar County Commissioners' Court in 1983.

The Steins and Killough own adjacent lots in San Antonio Ranch. Ranch Parkway is a main thoroughfare into the San Antonio Ranch subdivision. Apacheria runs off of Ranch Parkway, allowing further access into the subdivision. Killough's property is situated at the corner of Apacheria and Ranch Parkway, and the Steins access their property by turning off of Ranch Parkway, onto Apacheria, and passing by Killough's lot.

Both Apacheria and Ranch Parkway have medians running down their centers. The median on Apacheria extends to the end of the street, where Apacheria and Ranch Parkway intersect. The Steins frequently take large vehicles on to their property, including a travel-trailer, a dovetail-trailer and eighteen-wheeler trucks. The median, which is curbed and landscaped, impedes the Steins' ability to turn their large vehicles onto Apacheria. Therefore, they were driving over the median to make the turn. Killough placed large rocks and logs around the median's edges to prevent the Steins from driving over the median.

The Steins brought suit against Killough, seeking an injunction to prevent Killough from placing obstructions on the roadway. Specifically, they claimed that by doing so, Killough prevented them from "free ingress and egress to their property." Killough voluntarily ceased placing the obstructions on the roadway.

The Steins later informed Killough that they were going to shorten the median on Apacheria by 30 feet, which would entail removing the curb and foliage, replacing it with pavement, and replacing the curb at the shortened end of the median. Killough countersued, seeking declaratory and injunctive relief against the Steins to prevent them from making any alterations to the median.

Finding in Killough's favor, the trial court issued a judgment for declaratory and injunctive relief, which recites in part: "[T]he Court hereby declares that the streets and medians known as Apacheria Street and Ranch Parkway, located in the San Antonio Ranch Subdivision, Bexar County, Texas as set forth on plat recorded in Volume 9503, Page 83 of the Deed and Plat Records of Bexar County, Texas, are public roadways in their entirety, and the Court further declares that [the Steins], jointly or severally, have no right to alter or modify such roadways." The Steins appeal.

## JURISDICTION

Because the trial court, here, found that the roads in question are public, we must first address whether Killough has standing to bring a claim on the public's or county's behalf. Standing, as a component of subject matter jurisdiction, is an issue that may be raised by the court

---

1. The plat shows the shoulders on either side of Ranch Parkway are the "green belts." Generally, unless otherwise provided in the grant, "the owner of the land abutting the street, alley or public highway owns the fee to the center of the thoroughfare in question, subject only to an easement existing in favor of the public to a right of passage." *Camilla Twin Harbor Volunteer Fire Dept., Inc. v. Plemmons*, 998 S.W.2d 413, 417 (Tex.App.—Beaumont 1999, pet. denied).

for the first time on appeal. *Texas Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 445–446 (Tex.1993).

A plaintiff may not maintain an action unless he or she has standing to litigate the matters that are the basis of the lawsuit. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984); *Hotze v. Brown*, 9 S.W.3d 404, 409 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *State v. Castle Hills Forest, Inc.*, 842 S.W.2d 370, 372 (Tex.App.—San Antonio 1992, writ denied). Standing is "some interest peculiar to a person individually and not as a member of the general public." *Bass*, 664 S.W.2d at 324. A person has standing if (1) he has sustained, as a result of the wrongful conduct of which he complains, a direct injury; (2) there is a direct relationship between the alleged injury and the claim; (3) he has a personal stake in the case's outcome; (4) the challenged action has caused him some injury in fact; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own interest. *Hotze*, 9 S.W.3d at 409. A plaintiff must show that the subject matter of the litigation affects him differently than other citizens. *Hunt*, 664 S.W.2d at 324; *Hotze*, 9 S.W.3d at 409. We review the entire record for evidence supporting subject matter jurisdiction, construing the pleadings in the plaintiff's favor and considering the plaintiff's intent. *Texas Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

In his pleadings, Killough alleged the following:

> If Counter–Plaintiff's application for temporary restraining order is not granted, Counter–Plaintiff will suffer imminent and irreparable harm. Such harm is imminent because Counter–Defendants have advised Counter–Plaintiff that they intend to modify and alter the medians and streets adjoining Counter–Plaintiff's real property ... Such harm is irreparable because the modifications and alterations of the roadways ... would deprive Counter–Plaintiff of the use and enjoyment of his unique real property which is part of Counter–Plaintiff's rural homestead, and would deprive Counter–Plaintiff and the public of their rights in connections with the free and unrestricted use and enjoyment of such roadways.

And, at trial, Killough presented evidence that, should the Steins be permitted to alter the Apacheria and Ranch Parkway medians, his property value would be diminished. First, we note that Killough is an appropriate party to assert the public's rights in this litigation, as well as his own. A private landowner may enforce a public dedication, if the landowner has a property interest that will suffer if the publicly dedicated land is used in a manner inconsistent with its original purpose. *See Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex.1979) (discussing how an obstruction of a public road may give rise to cause of action brought by a private landowner). Secondly, viewing Killough's pleadings, as well as the entire record in his favor, the possible diminution of Killough's property value is an injury different than that which may be sustained by other citizens. Accordingly, we hold Killough has standing to bring this claim for injunctive relief.

## STANDARD OF REVIEW

An applicant for permanent injunctive relief must establish the existence of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. *Swate v. Medina Community Hosp.*, 966 S.W.2d 693, 700 (Tex.App.—San Antonio 1998, pet. denied). We review a trial court's ruling on applications for permanent injunctions for an

abuse of discretion. *Operation Rescue–Nat'l v. Planned Parenthood of Houston*, 975 S.W.2d 546, 560 (Tex.1998); *Chromalloy Gas Turbine Corp. v. United Techs. Corp.*, 9 S.W.3d 324, 328 (Tex.App.—San Antonio 1999, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In conducting our review, we consider the evidence in the light most favorable to the trial court's judgment. *Swate*, 966 S.W.2d at 700. If some evidence appears in the record which reasonably supports the trial court's decision, there is no abuse of discretion. *Id.* In reviewing for an abuse of discretion, we do not review the issues under traditional legal and factual sufficiency standards. *See Hotze*, 9 S.W.3d at 414. Legal and factual sufficiency claims are not independent grounds of error; they are factors we weigh in determining whether the trial court abused its discretion. *Hotze*, 9 S.W.3d at 414. For example, we will find an abuse of discretion if the record reflects that the trial court's findings necessary to sustain its order are not supported by some evidence. *Operation Rescue*, 975 S.W.2d at 560.

## Wrongful Act

 In their first issue, the Steins assert the trial court abused its discretion by permanently enjoining them from removing the obstructive portion of the median located on Apacheria Street. Specifically, the Steins argue that because Apacheria and Ranch Parkway have not been accepted by the county for maintenance, they, as abutting property owners, have the right to remove obstructions to the free and convenient access to their property. Their argument is, essentially, that there is no wrongful act to enjoin.

## Acceptance?

The Steins claim that because the trial court erroneously determined that the dedication in the plat made Apacheria a public road, it also erroneously found that any alteration to the median was subject to county approval. In making their claim, the Steins rely on *Langford v. Kraft*, 498 S.W.2d 42 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.).

In *Langford*, a land developer, in constructing homes and roadways in the subdivision, materially altered the land's ability to absorb natural rainfall. *Id.* at 45. Instead of being absorbed into the land, rainfall drained onto and across Kraft's land causing flooding and erosion. *Id.* at 46. Kraft sought and received a temporary injunction, requiring the developer to discontinue discharging water on his land. The developer appealed. *Id.*

On appeal, the developer claimed that, even though Kraft may have satisfied the requirements for the granting of a temporary injunction, because the County was a necessary party to the suit, the trial court erred in denying the developer's plea in abatement. *Id.* at 48. The developers predicated their argument on the fact that the county Commissioners Court had accepted the plat, which included a dedication to the public of the streets and alleys therein. *Id.* The court found that the county, other than approving the plat, had taken no action toward accepting the streets in the subdivision. *Id.* at 49. The court held that "[t]he filing and approval of the plat which undertakes to dedicate streets and roads does not make them public roads, since the dedication is a mere offer and the filing does not constitute an acceptance of the dedication." *Id.* (citing *Commissioners' Court v. Frank Jester Dev. Co.*, 199 S.W.2d 1004, 1007 (Tex.Civ. App.—Dallas 1947, writ ref'd n.r.e.)).

The Steins assert that although Bexar County approved and filed the plat here, there is no evidence to show that the County actually accepted the streets in question. Therefore, the Steins argue that the trial court erroneously determined that the dedication, without an acceptance, made Apacheria a public road requiring any change in the median be approved by the County.

 Killough, in response, asserts that the dedication of public roads need not always be accepted by a public authority; the general public may accept the dedication through actual use of the roadways. There are two types of dedications, express and implied. "Generally, an express dedication is accomplished by deed or written document." *Gutierrez v. County of Zapata,* 951 S.W.2d 831, 837 (Tex.App.— San Antonio 1997, no writ). Implied dedication, however, requires a clear intention on the landowner's behalf to appropriate the land to the public's use, along with an acceptance by the public or local authorities. *Id.* at 838; *City of Corpus Christi v. McCarver,* 289 S.W.2d 420, 421 (Tex.Civ. App.—San Antonio 1956, writ ref'd n.r.e.) (finding the City failed to introduce any evidence that the public, through use, accepted the dedication). The public may accept a dedication through use. *See Callaghan Ranch, Ltd. v. Killam,* No. 04–99– 00838–CV, slip op. at 6, 2000 WL 33128648, at *3 (Tex.App.—San Antonio December 6, 2000, no pet. h.) (the public can accept a dedication through general and customary use); *Williams v. Flores,* 295 S.W. 212, 213 (Tex.Civ.App.—San Antonio 1927, writ dism'd w.o.j.) (a proprietor's intent to dedicate, plus use by the public for years, constitutes a dedication). The use need

not be for any specific length of time. A short period of use generally is sufficient, as long as the use continues for such a period that it may be inferred that the public desires to accept in perpetuity the offer of use. *Schwertner v. Jones,* 456 S.W.2d 956, 958 (Tex.Civ.App.—Austin 1970, no writ); *City of Dallas v. Schawe,* 12 S.W.2d 1074, 1076 (Tex.Civ.App.—San Antonio 1928, writ dism'd w.o.j.).

In this case, the recorded plat "dedicates to the use of the public forever all streets, alleys, parks, water courses, drains, easements and public places thereon shown for the purpose and consideration therein expressed." And, there is evidence to support the trial court's finding that the public accepted this dedication through use. Killough testified, at the trial, that he has witnessed regular vehicular traffic on Ranch Parkway and Apacheria. In addition, other witnesses testified that the roads had been used by the general public. Accordingly, there is sufficient evidence to support the trial court's finding that, because the general public accepted the roads through use, the roads were dedicated to the public.

 The Steins cite the trial court's finding that Bexar County has not accepted Apacheria and Ranch Parkway for maintenance for the purposes of showing that the County, itself, has not accepted the dedication. The trial court, however, found that the public had accepted the dedication through use. "It is of no import that the County never designated the road as a public road or officially accepted it as a public road." *Gutierrez,* 951 S.W.2d at 841.[2] Rather, acceptance can be im-

---

**2.** In *Gutierrez,* this court found there was an implied dedication. We note that express and implied dedications share the same four elements. *Moody v. White,* 593 S.W.2d 372, 378 (Tex.Civ.App.—Corpus Christi 1979, no writ).

There are four distinct elements to establish dedication, whether express or implied: (1) the person making the dedication must have the ability to do so; he must have fee simple title before he can dedicate his property; (2)

plied from the public's conduct. *Id.* (citing *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex.1978)). We note that the parties, at trial, agreed that if the court declared Apacheria and Ranch Parkway public roads, the county would be responsible for maintaining them.

We hold there is evidence to support the trial court's finding that Apacheria and Ranch Parkway are public roads. Based upon this finding, there is evidence that removing the median would be a wrongful act.

### Common–Law Dedications or Statutory Public Roads?

■ The Steins also claim that because the roads are common law express dedications rather than statutory public roads, they cannot appeal to the County to resolve access problems. Specifically, they claim that the County has the power to approve the alteration of statutory public roads only and, thus, lacks the authority to do so in this case.

■ A statutory public road is one "that has been laid out and established according to law and that has not been discontinued. . . ." Tex.Trans.Code Ann. § 251.002 (Vernon 1999). A common-law dedication is one where the original property owner either expressly or implicitly devotes the land to public use and the dedication is accepted. *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 882–883 (1960). Undisputedly, the roads in this case arose from common-law dedications.

there must be a public purpose served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of that offer. *Lindner v. Hill*, 673 S.W.2d 611, 616 (Tex.App.—San

■ The Texas Supreme Court set out the basic principles for determining when a road becomes a public road.

> All roads which have been laid out and established by authority of the commissioners' courts are public roads . . . A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with the assent of the owner or by prescription. A road may also become public, in the sense that the public have the right to use it, by dedication.

*Worthington v. Wade*, 82 Tex. 26, 17 S.W. 520, 521 (1891). Accordingly, a county is authorized to maintain roadways in rural subdivisions if the roads were originally established as public roads by the commissioners' court, by prescription, or by dedication and acceptance by the public or local authorities. *See McCarver*, 289 S.W.2d at 421; Op. Tex. Att'y Gen. No. JM–200 (1984). As we previously stated, the roads in this case were dedicated to the public by the original property owner, and accepted by the public through use. The Commissioners' Court, therefore, has the authority to approve proposed alterations made to a common-law public road.

### Imminent Harm & Irreparable Injury

■ The Steins also assert that there is no evidence to support the trial court's findings that the alteration of the street median would result in imminent and irreparable injury to Killough. To be entitled to injunctive relief, an applicant must establish imminent harm and irreparable injury. *Swate*, 966 S.W.2d at 700.

Antonio 1984) *aff'd by* 691 S.W.2d 590 (Tex. 1985). It does not matter whether a county expressly accepts an offer of dedication, or the public accepts the dedication on the county's behalf.

■ A property owner may testify to the property's value. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). An owner's testimony, however, is subject to some restrictions. *Id.* "In order for a property owner to qualify as a witness to the damages to his property, his testimony must show that it refers to market, rather than intrinsic or some other value of the property." *Id.* at 504–505.

In *Porras,* Craig brought suit for permanent damage to his land, after Porras, a neighboring property owner, bulldozed a portion of Craig's property. In determining the measure of damages, Craig testified that his property was worth $35,000 before the clearing operations and $15,000 afterward. *Id.* at 505. He explained that he arrived at his conclusion because he and his wife bought the property to build their retirement home on, and that because of the property's diminished value, they were reluctant to build a home on the property. *Id.* The Texas Supreme Court found that Craig's testimony amounted to no evidence of actual damages because he referred to personal rather than market value in reaching his conclusion. *Id.*

In this case, like in *Porras,* Killough testified that his property value would be diminished should the Steins be permitted to remove portions of the Ranch Parkway and Apacheria medians. Specifically, he stated that he "was under the impression that [Ranch Parkway and Apacheria were] public road[s] and that to make modifications to the roadway[s] could effect (sic) my property values." However, in this case, Killough presented another witness to testify as to the diminution of property value should the Steins be permitted to alter the medians. William L. Hoover, the president of a subdivision developer that owns 270 acres at the end of Apacheria, testified similarly. Specifically, when asked whether he objected to shortening the median, Hoover replied:

> that the median is about the nicest thing about going to my property, and its got a lot of nice vegetation in it. And in my experience—and I've been in the real estate business for eighteen years now—nicer subdivisions have medians like the ones that are there; and so, it makes a difference to me whether or not that median is there. It makes my property more valuable, I think .... if [the median] was shortened 40 feet or whatever, that would make a difference to me. And, ... the reason why it makes a difference to me is because I think it would make a difference to anybody that came out there looking to spend their money to invest in a piece of property there.

Although Killough's testimony does not refer to the actual market value of his property, implicitly, Hoover's does. As a subdivision developer, Hoover would be concerned with the property's market value for resale purposes. We, therefore, can interpret Hoover's testimony to mean that the property's market value would be diminished should the Steins be permitted to remove portions of the medians. This testimony, coupled with Killough's, is some evidence of irreparable harm. Furthermore, the Steins gave Killough notice of their intention to remove parts of the median only five days before they actually planned to do so. Accordingly, we cannot find the trial court erred in entering a finding that removing the medians would be imminently and irreparably harmful to Killough.

CONCLUSION

We hold that because Apacheria and Ranch Parkway are public roads, removing portions of the medians on those roads

without county approval may be considered a wrongful act. Additionally, there is some evidence to support the trial court's findings that Killough would be imminently and irreparably harmed should the Steins be permitted to remove the medians. Accordingly, we hold the trial court did not abuse its discretion in granting Killough's request for a permanent injunction.