

# NUMBER 13-20-00568-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHARLIE W. TORRES AND
MARICELA R. TORRES,                                                    Appellants,

v.

CAMERON COUNTY, TEXAS,                                                   Appellee.

**On appeal from the 404th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva
Memorandum Opinion by Justice Hinojosa**

Appellants Charlie and Maricela Torres appeal a declaratory judgment concerning the location of a public roadway. Following a bench trial, the trial court granted judgment in favor of appellee Cameron County, Texas (the County), declared that the roadway was properly located within the area expressly dedicated to the County, and required the

Torreses to remove all obstructions within the County's sixty-foot right-of-way (ROW). In four issues, the Torreses argue: (1) the trial court's judgment does not conform to the pleadings; (2) the evidence supporting the judgment is legally and factually insufficient; (3) the trial court erred in awarding attorney's fees and requiring the Torreses to pay for a new survey; and (4) the trial court erred in denying the Torreses' requested relief. We affirm.

## I.  BACKGROUND

### A.  Adams Lane Road

In 1965, Floyd Reynolds dedicated a certain .81–acre ROW easement,[1] forty feet in width, located in the Byrnes Subdivision Lot 5, to the County. The ROW was granted for the construction of a public roadway to connect existing roads in the neighboring subdivisions. The 1965 dedication described that the road would begin at the southwest corner of Lot 3, Block 5 of the Arroyo Drive Subdivision and would connect to the southeast corner of Lot 44 of the Hooks and Hodges Subdivision. The dedication contained the following metes and bound description for the boundary of the ROW:

> BEGINNING at the southwest corner of Lot 3, Block 5, Arroyo Drive Subdivision, said corner being on the east line of the Byrnes Subdivision and being North 0° 37' West, 679.6 feet from the northeast corner of Lot 5, Byrnes Subdivision;
>
> THENCE, South 0° 37' East, along the east line of said Lot 5, a distance of 20.0 feet to a point for the southeast corner of the tract herein described;

---

[1] The recorded document is titled "Right-of-Way Easement," but it also states that the property is being "donated" to the County for the construction of a highway. "The terms dedication and easement are not synonymous." *Long Island Owner's Ass'n, Inc. v. Davidson*, 965 S.W.2d 674, 684 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (citing *Russell v. City of Bryan*, 919 S.W.2d 698, 702 (Tex. App.— Houston [14th Dist.] 1996, writ denied)). "A dedication grants an easement to the general public in the land dedicated for its use . . . [, whereas] [a]n easement extends to certain persons the right to use the land of another for a specific purpose." *Id.* (internal citations omitted).

THENCE, South 87° 55' 41" West, across said Lot 5, along a line parallel to and 20.0 feet south of the proposed road centerline, 886.8 feet to a point on the west line of Lot 5, for the southwest corner of the tract herein described;

THENCE, North 0° 37' West along said west line, at 20.0 feet pas[t] the southeast corner of Lot 44 of the Hooks and Hodges Subdivision, and a total distance of 40.0 feet to a point for the northwest corner of the tract herein described;

THENCE, North 87° 55' 41" East, across said Lot 5, along a line parallel to and 20.0 feet north of the proposed road centerline, 886.8 feet to point on the east line of said Lot 5;

THENCE, South 0° 37' East, along said east line, 20.0 feet to the Place or Beginning, containing 0.81 acre of land, more or less.

The dedication was filed in the County deed records and was accompanied by a drawing showing the location of the proposed roadway:



In 1976, Reynolds dedicated ten feet to the north and south of the ROW resulting in a total width of sixty feet. The County built Adams Lane Road, which is twelve to fifteen feet wide pursuant to the dedications and has continually maintained the road to the present.

In 2005, the Torreses purchased a two-acre portion of the Byrnes Subdivision, Lot 5 which was bordered by Adams Lane Road on the south. In 2015, the Torreses purchased an adjacent thirteen acres located within Lot 5. In connection with the purchase, the title company commissioned a survey of the land which showed Adams Lane Road strayed slightly from the dedicated ROW onto the thirteen acres. The Torreses

4

approached County officials and requested that the County move the road so that they could place a fence on what they believed to be the edge of their property. The County declined, and the Torreses proceeded to place a fence within a couple of feet of the existing road.

**B.    Pleadings**

The County sued the Torreses for declaratory judgment and injunctive relief. It sought a declaration that "Adams Lane Road is a [sixty] feet wide public road which is a County Road duly dedicated and accepted into the County road system[,]" and "the fence, the electric wire, the metal posts[,] the wooden railroad posts[,] and metal gate that [the Torreses] installed . . . encroach on and obstruct the public [ROW] and must be removed." The County sought a mandatory temporary and permanent injunction that the Torreses remove the obstructions from the ROW.

The Torreses answered and filed a countersuit against the County seeking declaratory relief and pleading the affirmative defense of adverse possession. The Torreses sought a declaration "that Adams Road is a [sixty] foot county [ROW] which lays as depicted in the survey completed by Moore Land Surveying, LLC on May 31, 2017." According to the survey, the [ROW] is south of where the County believes it to be. The Torreses also filed a third-party suit against James and Melanie Pemelton, who owned property within Lot 5 of the Byrnes Subdivision on the southern side of Adams Lane Road. The Torreses contended that their property boundary extended to the other side of the road where the Pemeltons' fence was currently located and sought declaratory relief to that effect. The Pemeltons filed an answer and counter claim for declaratory relief. The

5

Pemeltons alleged that they perfected title to the property located within their fence by adverse possession.

## C.     Bench Trial

At trial, the County relied on the testimony of Daniel Orive, a licensed professional land surveyor and former County surveyor and ROW agent. Orive reviewed all the relevant deed records to determine the proper location of the dedicated ROW. He stated that the most important description was from the 1965 dedication stating that the ROW began at the southwest corner of Lot 3, Block 5, of the Arroyo Drive Subdivision and extended to the southeast corner of Lot 44 of the Hooks and Hodges Subdivision. He states that this locked the location of the proposed easement. Orive stated that the intent of the dedication was to connect the two existing roads in the neighboring subdivisions so that travelers would not have to go around Lot 5 of the Byrnes Subdivision. Orive maintained that the drawing attached to the 1965 dedication shows where the proposed road was going to be and that "it is monumented on the ground." Orive testified that Adams Lane Road was located within the ROW as described by the 1965 and 1976 dedications. Orive maintained that the Torreses' fence encroaches on the ROW.

Orive explained that the metes and bounds description in a 1988 warranty deed for a thirteen-acre portion of Lot 5 of Byrnes Subdivision was incorrect and resulted in the subsequent 2015 and 2017 surveys being incorrect. Orive explained that the surveyor assumed that the center line of Adams Lane Road was the southwest corner of Lot 5, but that it was actually further south. Orive stated that the subsequent surveys used the right direction and distance to identify the ROW, but they identified the wrong commencement

6

point. As a result, the surveys identified a ROW that did not connect to the ROWs in the neighboring subdivisions. Orive noted that a correction deed was later prepared when a two-acre tract from the subject property was conveyed, which required County approval through a "subdivision process." The correction deed showed the Lot 5 boundary to be south of the ROW.

The Torreses called Cody Michael Moore, a registered professional land surveyor. A title company commissioned Moore to prepare a survey pursuant to the Torreses' 2015 land purchase. Moore testified that the metes and bounds descriptions in the original ROW documents did not align with the physical location of the pavement. When Moore conducted a field survey, he found physical markers or "field monumentation" that matched the descriptions in the dedications, "but the distances between them were not lining up with the pavement that we measured." Moore prepared a subsequent survey in 2017, which was updated to show the location of the ROW compared to where the County claimed it to be. The following portion of the 2017 survey illustrates the alleged competing interpretations:

7



Moore stated that the only thing that contradicted his 2017 survey was the description in the 1965 dedication identifying the northwest corner of the ROW as twenty feet past the southeast corner of Lot 44 of Hooks and Hodges Subdivision. Moore stated that "it[ i]s mathematically impossible to get the rest of it to fit with that call[.]"[2] Moore explained that if one were to use that call to locate the ROW, "that would make all of the bearings change[,] . . . rather than running southwest, that would make it run northwest[,] which is where the existing pavement is." Moore conceded that the roadway would be within the ROW if you would draw a line between the two block corners "and disregard everything else."

During trial, the Torreses announced a settlement of their claims against the Pemeltons, conceding that the Pemeltons acquired title to the disputed property on the south side of Adams Lane Road by adverse possession.

---

[2] According to the witnesses, a call is a reference to direction and distance.

## D.    Judgment

After both parties rested and closed, the trial court announced the following from the bench:

So a person may not take adversely from the Government but the Government may take adversely from—adverse possession from anyone. If that road having laid where it is right now[,] judicial economy dictates that the road stay where it is gonna stay even if the easement was to be wrong because it has been there for [forty] years.

So the road is going to stay where it is at. Given that [the Torreses have] already settled with the Pemeltons, their fence stays. From that fence to the Torres[es' sixty] feet away is where the fence will lie for [the] Torres[es]. That whenever the County is going to do anything on that road, they should measure to the center of that [thirty] feet and then improve that road evenly to each side. So if the road is off to where it[ i]s, you know, at midpoint being they have 8 feet and y'all have ten, it needs to be—it[ i]s [sixty] feet from that fence to the other. The road is midpoint. The center of that road should be midpoint. Wherever that zero is, it should go [thirty] and [thirty]. Okay? So that[ i]s the ruling of the Court.

. . . .

[T]he judicial finding of the Court is that this is the easement as dedicated or as conveyed or through adverse possession of the County. This is going to be where the easement lies.

The trial court later signed a written judgment which contained the following pertinent declarations: "Adams Lane Road was duly, properly, and expressly dedicated for use as a public road" by the 1965 and 1976 dedication instruments for a total width of sixty feet; "Adams Lane Road was constructed based on such dedications and acceptance and has been continually maintained by [the] County . . . and has been continually used by the traveling public[;] and "Adams Lane Road is properly located in the physical location it has been through the years and is currently located at." The trial court ordered the Torreses to remove all obstructions placed within the County's ROW and declared them to be a

9

dangerous condition. The trial court ordered the parties to split the cost of a new survey showing the center of the County's ROW as being located thirty feet north of the Pemeltons' fence. The trial court awarded the County $5,000 in attorney's fees through trial, $5,000 in conditional appellate attorney's fees, and $5,000 in attorney's fees if the County prevails in an appeal to the Texas Supreme Court.

The Torreses requested findings of fact and conclusions of law, but the trial court did not enter any. The Torreses filed a motion for new trial, which they later supplemented, that was overruled by operation of law. This appeal followed.

## II.    JUDGMENT CONFORMITY

By their first issue, the Torreses complain that "[t]he trial court erred in rendering judgment on a cause of action not pled or tried by consent."

### A.    Standard of Review & Applicable Law

Under Texas Rule of Civil Procedure 301, a judgment must conform to the pleadings. TEX. R. CIV. P. 301; *Adeleye v. Driscal*, 544 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "[A] party may not be granted relief in the absence of pleadings to support that relief." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). "However, issues not raised in the pleadings can be tried by express or implied consent of the parties." *Driscal*, 544 S.W.3d at 484 (citing TEX. R. CIV. P. 67). "Because the party's pleadings invoke the trial court's jurisdiction to render a judgment, an order not supported by the pleadings is void for lack of jurisdiction." *In re P.M.G.*, 405 S.W.3d 406, 416–17 (Tex. App.—Texarkana 2013, no pet.). We review issues concerning a trial court's subject-matter jurisdiction de novo. *Gauci v. Gauci*, 471 S.W.3d 899, 901

10

(Tex. App.—Houston [1st Dist.] 2015, no pet.).

"[A] judgment or order that is rendered in writing and signed by the trial judge becomes the official judgment of the court." *Lopez v. Brown*, 356 S.W.3d 599, 603 n.4 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Harrington v. Harrington*, 742 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1987, no writ)). Any time there is a conflict between oral pronouncements made by a trial judge and his or her written judgment or order, the matters set forth in the written order control. *In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *In re JDN Real Estate–McKinney, L.P.*, 211 S.W.3d 907, 914 n.3 (Tex. App.—Dallas, 2006, orig. proceeding); *see also Kaur-Gardner v. Keane Landscaping, Inc.*, No. 05-17-00230-CV, 2018 WL 2191925, at *4 (Tex. App.—Dallas May 14, 2018, no pet.) (mem. op.).

B.    **Analysis**

The Torreses argue that the County did not plead adverse possession as a theory of relief. Therefore, they argue that the trial court's judgment is void to the extent it relies on this unsupported theory.

In its oral pronouncement, the trial court stated that "[t]he judicial finding of the Court is that this is the easement as dedicated or as conveyed or through adverse possession of the County." However, the trial court's written judgment does not contain any reference to adverse possession. Rather, it references only the County's pleaded theory of express dedication. The judgment contains a declaration that "Adams Lane Road was duly, properly, and expressly dedicated for use as a public road[.]" The judgment further declares that "Adams Lane Road is properly located in the physical

11

location it has been through the years and is currently located at." The written judgment constitutes the official judgment of the trial court, and it controls over the trial court's prior oral pronouncement. *See In re L.G.R.*, 498 S.W.3d at 206; *Lopez*, 356 S.W.3d at 603 n.4. Because the written judgment is based on the County's pleaded theory of express dedication, it is not void. *See In re P.M.G.*, 405 S.W.3d at 416–17. We overrule the Torreses' first issue

## III. SUFFICIENCY OF THE EVIDENCE

By their second issue, the Torreses argue that the evidence is legally and factually insufficient to support the judgment.

### A. Standard of Review

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the trial court does not issue findings of fact and conclusions of law, we must imply all necessary findings to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). "[I]mplied findings may be challenged for legal and factual sufficiency in the same manner as a challenge to express findings of fact or jury findings." *Silverio v. Silverio*, 625 S.W.3d 680, 683 (Tex. App.—El Paso 2021, no pet.).

The test for legal sufficiency is whether the evidence supporting the challenged finding rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). On the other hand, evidence is legally insufficient to support a disputed fact finding when

(1) evidence of a vital fact is absent, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id*. at 810.

"When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged finding." *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.— Houston [14th Dist.] 2017, no pet.). When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bennett v. Comm'n for Law. Discipline*, 489 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 819. When the evidence is conflicting, we must presume that the factfinder resolved the inconsistency in favor of the challenged finding if a reasonable person could do so. *Id*. at 821. We do not substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id*. at 822.

**B.    Applicable Law**

Dedication occurs when an owner of real property transfers private land to the

public for any general or public use. *Shelton v. Kalbow*, 489 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Hatton v. Grigar,* 66 S.W.3d 545, 554 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). An owner who dedicates land reserves no rights in the property that are incompatible with the full enjoyment of the public. *Id.* A dedication can be express or implied. *Id.* (citing *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.)). In either case, four elements are required to establish the dedication: (1) a person must have fee simple title before he can dedicate his property; (2) a public purpose is served by the dedication; (3) there must be an express or implied offer; and (4) the public entity must accept the offer. *Id.* (citing *Stein*, 53 S.W.3d at 42 n.2). "Generally, an express dedication is accomplished by deed or other written document." *Id.* (citing *Stein*, 53 S.W.3d at 42; *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

An easement created by an express grant must be described with such certainty that a surveyor could go upon the land and locate the easement from the description. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *see also Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2016, no pet.) (mem. op.). A court's "objective in construing a [dedication] is to discern and effectuate the [parties'] intent as reflected in the [dedication] as a whole." *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016). "Even if an easement is uncertain, however, a court is not authorized to completely ignore the right granted, if the easement is susceptible to a reasonable construction as to its true intent and meaning." *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 803 (Tex. App.—

14

San Antonio 2014, pet. denied) (cleaned up).

> [T]he metes-and-bounds description is not to be given controlling effect, when it is apparent from the language of the deed, read in the light of the surrounding circumstances, that the parties intended that the general description should control, or when the general description more surely indicates the true intention, or when the grantor's intention clearly and unmistakably appears from the language of the entire instrument.

*Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 21–22 (Tex. 2015) (quoting *Ford v. McRae*, 96 S.W.2d 80, 83 (Tex. 1936)).

## C.    Analysis

The Torreses argue that the evidence is legally and factually insufficient to establish "the [p]aved [r]oad [l]ay [w]ithin [the] [e]xpress [d]edication[.]" The Torreses maintain that Orive ignored the metes and bounds description in determining the original grantor's intent, while Moore retraced the steps of the original description, locating multiple corresponding field monuments. The Torreses maintain that Moore's testimony conclusively established the location of the ROW on the ground as described in the dedications. We disagree.

Accepting the Torreses' argument would require us to view the record in the light most favorable to the Torreses and resolve conflicting evidence in the Torreses' favor. However, our standard of review requires the opposite. *See City of Keller*, 168 S.W.3d at 822. When we view the record in the proper light, we note that Orive testified unequivocally that Adams Lane Road was located within the ROW as described in the dedications. He stated specifically that the most important descriptors were the identification of the beginning of the easement—the southwest corner of Lot 3, Block 5, of the Arroyo Drive Subdivision—and its ending—the southeast corner of Lot 44 of the

15

Hooks and Hodges Subdivision. Orive explained that this locked the location of the proposed easement and that the primary intent of the dedication was to connect the existing roads in the neighboring subdivisions. He stated that Moore's surveys relied on a description of Lot 5 of the Byrnes Subdivision from a 1988 warranty deed that was later proven to be incorrect. That warranty deed identified the southern boundary of Lot 5 as the midpoint of the ROW instead of further south. Further, Moore's survey description did not properly connect the ROWs of the adjacent subdivisions, contrary to the primary intent of the dedication.

Moore urged a different location for the ROW, but this required that he ignore the call designating the northwest corner of the described property. Otherwise, he claimed that calculating the boundary was mathematically impossible. Moore further conceded that the roadway would be within the ROW if someone were to draw a line between the two block corners described in the dedication. *See Wall v. Carrell*, 894 S.W.2d 788, 798 (Tex. App.—Tyler 1994, writ denied) (rejecting a sufficiency challenge in a land dispute where the testimony of the various surveyors was conflicting). Even if we were to accept Moore's representation that the boundaries as indicated in the 1965 dedication present a mathematical impossibility, the general description of the easement as connecting the two existing roadways would still be reflective of the true intention of the dedication. *See Stribling*, 458 S.W.3d at 22 (explaining that we may look "to the general description for the parties' intent [when] the specific description [is] defective or incomplete"); *see also Templeton v. Dreiss*, 961 S.W.2d 645, 659 (Tex. App.—San Antonio 1998, pet. denied) ("It is further recognized that the description in a deed is not required to be mathematically

16

certain, but only reasonably certain so as to enable a party familiar with the locality to identify the premises to be conveyed to the exclusion of others.").

We conclude that the evidence would enable reasonable and fair-minded people to reach the judgment of the trial court. *See City of Keller*, 168 S.W.3d at 827. Further, considering all the evidence both in favor of and contrary to the trial court's judgment, *see Vast Constr.,* 526 S.W.3d at 723, we conclude that its determination is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Bennett*, 489 S.W.3d at 66. Therefore, we overrule the Torreses' second issue.

Based on our resolution of this issue, we must necessarily overrule the Torreses' remaining issues which are dependent upon the Torreses' argument that there is insufficient evidence supporting the judgment.[3] *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## IV.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
22nd day of December, 2022.

---

[3] We disagree with the Torreses' argument that the County did not prevail on its declaratory judgment action because the trial court ordered a new survey for the ROW. The trial court's declarations as set out above are clearly in favor of the County regarding the location of the ROW.

17