

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00361-CV

John H. **WHITE**, Jr., individually and as Trustee of the Christopher C. White Trust, Matthew M. White Trust, and 1976B John H. White Trust F/B/O David Ryall White, Appellant

v.

## **TCW HELOTES RANCH LTD.**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2025-CI-07689
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
               Irene Rios, Justice
               Lori Massey Brissette, Justice

Delivered and Filed: January 14, 2026

AFFIRMED

Appellant John H. White, Jr., individually and as trustee of the Christopher C. White Trust and the 1976B John H. White Trust f/b/o David Ryall White (collectively the "John White Trust") appeals from the granting of a temporary injunction in favor of appellee TCW Helotes Ranch Ltd. In one issue, the John White Trust argues the trial court erred and abused its discretion in granting

TCW Helotes Ranch's application for a temporary injunction because it presented legally and factually insufficient evidence of a probable, imminent, and irreparable injury.  We affirm.

## I. BACKGROUND

The instant appeal is the latest appellate proceeding in a long running dispute between three neighboring siblings:  John H. White, Jr., Ethel Smyth White Moore, and Tuleta White (owner of TCW Helotes Ranch).  *See MWM Helotes Ranch, Ltd. v. White*, No. 04-18-00498-CV, 2020 WL 1695510, at *1 (Tex. App.—San Antonio Apr. 8, 2020, no pet.) (mem. op.); *In re MWM Helotes Ranch, Ltd.,* No. 04-14-00350-CV, 2014 WL 2158486, at *1 (Tex. App.—San Antonio May 21, 2014) (orig. proceeding) (per curiam) (mem. op.).

### A.    Procedural Background

The dispute dates back to at least 2008, when the siblings signed a settlement agreement that partitioned their family ranch into three separate parcels.  John (through appellant the John White Trust) and Moore (through the MWM Helotes Ranch Ltd.) took parcels that run along Texas Highway 16.  Tuleta's parcel (owned by appellee TCW Helotes Ranch) abutted no public roadway. To afford Tuleta access to Texas Highway 16, Tuleta's parcel was granted a road easement across Moore's parcel (the Moore road easement).

The settlement agreement did not fully resolve the conflict amongst the siblings because a dispute involving the contours of the Moore road easement persisted.  As the Moore road easement dispute worked its way through arbitration, Tuleta asked John for permission to use a road across his parcel.  John agreed, and in 2011, he signed a written easement agreement in gross (the John road easement), which provides in relevant part:

> EASEMENT PURPOSE: This is an Access Easement in gross for providing ingress and egress to allow for the use and enjoyment of [Tuleta's parcel].  The Easement shall be available for use by [appellee TCW Helotes Ranch] and delivery vehicles, employees, guests and invitees.

> Duration of Easement. The easement shall terminate upon the earlier to occur of (a) the duration of Tuleta C. White's lifetime; (b) the termination of TCW Helotes Ranch, Ltd.'s ownership of [Tuleta's parcel]; or (iii) the transfer by Tuleta C. White of her controlling ownership interest in TCW Helotes Ranch, Ltd.
>
> Rights Reserved. Grantor reserves for Grantor and Grantor's heirs, successors and assigns the right to continue to use and enjoy the surface of the Easement Property for all purposes including, but not limited to the Easement Purpose, which do not interfere with or interrupt the use or enjoyment of the easement.

According to John, Tuleta's use of the John road easement "gradually built up" to the point where he determined it to be a hazard to his family.

In April 2025, the John White Trust filed a petition for declaratory judgment to terminate the John road easement. On April 25, 2025, John blocked the John road easement with a piece of heavy construction equipment. In response, TCW Helotes Ranch filed a counter petition that sought, among other things, a declaration that the John road easement provides TCW Helotes Ranch with "the right to unfettered access to" the John road easement and injunctive relief — in the form of a temporary restraining order followed by a temporary and then permanent injunction. The trial court granted TCW Helotes Ranch a temporary restraining order that prevented the John White Trust from blocking the John road easement, and it set the matter for a temporary injunction hearing.

## B.     Temporary Injunction Hearing

At the temporary injunction hearing, an affidavit signed by Tuleta was admitted into evidence. It provides in relevant part:

> I am legally deaf, have lost all vision in one eye, and have lost most vision in my other eye. I have extensive medical and personal needs that require caretakers and medical personnel to access and use the [John road] Easement in order for me to have the ability to stay on the TCW Tract [Tuleta's parcel] and to have use and enjoyment of the TCW Tract. The inability for me and other guests or invitees of TCW to access and use the Easement would present a dangerous risk to my life and health in the case of a personal or medical emergency.

Additionally, many animals live on the TCW Tract and require food and water twice daily, including 19 horses, 6 donkeys, 39 cows and 22 dogs. Invitees of TCW rely on the Easement to access the TCW Tract in order to care for the animals.

. . .

At the time the Easement was blocked and access was removed on April 25, 2025, I was physically present on the TCW Tract and was unable to leave the TCW Tract due to [the John White Trust's] sudden refusal to allow for use of the Easement. Additionally, my caretakers were unable to access the Easement to care for me due to [the John White Trust] blocking the Easement.

Since I require frequent medical and general assistance, the Whites' conduct of not just locking me in- but locking out my caretakers- possesses a grave danger to me.

At no time since the inception of the Easement have TCW or I stopped using the Easement or abandoned the Easement. The purpose of the Easement, which is to provide access, ingress to, and egress from the TCW Tract to allow for the use and enjoyment of same, remains as necessary today as it was in 2011 when the Easement was created. At no time since 2011 has any person or entity other than TCW owned the TCW Tract, and at no time have I transferred my controlling ownership interest in TCW to anyone else.

. . .

If [the John White Trust's] actions are not restrained immediately, [the John White Trust's] actions amount to an imminent denial of TCW's full use and enjoyment of the Easement and the TCW Tract.

John testified that, years ago, Tuleta's employees asked to use the John road easement because Moore was "unbearable to deal with" and would "stop them on the road and read them the riot act." John agreed, but then Tuleta asked for a written easement. John "carelessly read it," and he asked his children to sign it. John recalled that when he first signed the John road easement, Tuleta lived "in town" and visited her parcel two to three times a week. She had ranch hands that lived on her parcel, but they would venture into town only to buy groceries or animal feed. Then, Tuleta's house in town was damaged, and she began living on her parcel full-time. At that point, the traffic to Tuleta's parcel jumped to five-to-seven times a day. John did not know the employees

Tuleta had traversing the John road easement. He became concerned with the amount of traffic because he, his children, and grandchildren now live on his parcel. John recalled that, in the past five years, a vehicle had run off the John road easement and into a culvert. A "big wrecker" had to extricate the vehicle, and in the process, it damaged part of the roadway. John did not believe that the Moore road easement was any more safe or more dangerous than the John road easement. John further compared the roads: the Moore road easement is paved with asphalt; the John road easement is "seal coated," which keeps the dust down. John elaborated that his road has "chuck holes" due to the excessive use, and he is not inclined to repair it until he has control of the road.

On cross examination by Tuleta, John acknowledged that when he signed the 2011 John road easement he knew that, in accordance with the 2008 settlement agreement, Tuleta would also have access to the Moore road easement. John also acknowledged that none of the conditions that would lead to the John road easement's expiration have occurred.

Jesse D. Ocampo, one of Tuleta's "helpers," testified that Tuleta resides fulltime on her parcel. Ocampo drives Tuleta for everyday errands, such as to the grocery store. He also takes her water because a cistern on her property has gone dry. Ocampo helps care for Tuleta's dogs, cats, cattle, horses, and other wildlife. Ocampo has used both the John road easement and the Moore road easement. He characterized the John road easement as "a lot more reliable, a lot easier to get access to Ms. Tuleta." Using the Moore road easement is more cumbersome because Moore has numerous rules and conditions. For example, the Moore road easement is locked at the Texas Highway 16 entrance and again at the dividing line between Moore's and Tuleta's parcels. Moore sets each lock's code. She also insists that each guest check in with her when they enter her parcel and after they have crossed it. Moore sets a speed limit of twenty miles per hour, requires that guests undergo a background check and provide her with a copy of their driver's license and

insurance card. Ocampo recalled that Moore "banned" a co-worker from using the Moore road easement because the co-worker had not checked in with her. Ocampo characterized Tuleta not being able to leave her parcel or her helpers or emergency crews not being able to access her parcel as dangerous. Ocampo noted that the Moore road easement is "tricky" and "unreliable" because it is very narrow and has lots of winding turns and hills. An emergency vehicle, such as an ambulance or fire truck, would flip if they hit a corner too quick. Although, Ocampo acknowledged that he did not know of any emergency vehicle that had flipped while using the Moore road easement. The Moore road easement takes between twenty and twenty-two minutes to cross between Texas Highway 16 and Tuleta's home, while the John road easement takes between fifteen and seventeen minutes.

Tina M. Ramos, Ocampo's mother, testified that she has worked for Tuleta since 2017. Like Ocampo, Ramos helps Tuleta by driving her to run errands and tend to her animals. Ramos visits Tuleta on her parcel between four and five times a week. Ramos has only used the John road easement.

Jesus Cardenas is also one of Tuleta's helpers. He too helps Tuleta by driving her to doctor's appointments and caring for her animals. In the previous year to year and a half, Cardenas has been helping to repair Tuleta's home "in town" from damage due to leaks. When Cardenas goes to Tuleta's parcel, he uses a "service" gate to access the John road easement. There is another gate that opens by a "clicker" that Cardenas does not use. Cardenas believes that it is "absolutely" a danger to Tuleta to not have ready access to get off her parcel because she has trouble walking and does not drive.

Moore described the Moore road easement as having "multiple dangers." Indeed, she recalled that her grandfather ran off the Moore road easement "multiple times." Moore detailed

that it had seven or eight "90-degree turns, six of which are blind turns right before or after the 90-degree turn." There are also "a number of dangerous drop-offs." At one point, the Moore road easement travels over a dam. If a driver goes off the roadway, he may fall into a thirty-five acre, fifty-foot-deep lake. Moore opined that "[t]o anyone not familiar with my road, having to drive it in the dark under stress would be very dangerous." The Moore easement road is secured by a gate off of its Texas Highway 16 entrance. The gate may be opened by a remote control or using a code on a keypad. Moore has never provided Tuleta with a remote control. Instead, Moore provides Tuleta with a gate code. Indeed, Moore recalled providing either Tuleta or one of her employees a gate code within "the last few days." Moore could not recall ever denying someone access because "[n]o one has ever abused the privilege." However, she would not characterize access to it as "free." Instead, Moore requires adherence to "important restrictions for their safety." Moore detailed that she wants to know when any visitor enters and exits the Moore road easement to ensure that they made it to their destination safely. She changes the gate code frequently because "temporary workers" use the Moore road easement. The Moore road easement runs along three to three and a half miles of Moore's parcel before it reaches Tuleta's parcel. Notwithstanding the provisions in the settlement agreement, Moore insisted that Tuleta's workers' use of the Moore road easement was temporary.

## C.     Temporary Injunction Order

The trial court granted TCW Helotes Ranch a temporary injunction. In its written order, the trial court found that:

> . . . [TCW Helotes Ranch] will suffer immediate and irreparable harm because Tuleta White, who is TCW's sole partner and lives on the TCW Tract, will be unable to receive the personal and medical care she requires from caretakers and medical personnel for her to be able to use and enjoy the TCW Tract.

> . . .

. . . [I]f the Whites are allowed to continue to block TCW, its invitees, and its guests access to the [John road] Easement, TCW will suffer immediate and irreparable harm because TCW will be unable to care for its animals living on the TCW Tract that need to be tended to daily.

The temporary injunction order enjoined the John White Trust from:

Refusing to allow TCW, and delivery vehicles, employees, guests, and invitees of TCW, to access or use the Easement;

Interfering or attempting to interfere with the free and uninterrupted use of, or access to, the Easement by TCW and delivery vehicles, employees, guests' and invitees of TCW;

Placing or attempting to place any gates, locks, or obstructions upon the Easement that would interfere with the access of TCW and delivery vehicles, employees, guests, and invitees of TCW; and

Placing or attempting to place any locks or obstructions upon gates or other entrances to the JHW Tract that would interfere with the access or use of the Easement by TCW and delivery vehicles, employees, guests, and invitees of TCW.

The John White Trust timely filed a notice of interlocutory appeal.

## II. DISCUSSION

In the John White Trust's sole issue, it argues that TCW Helotes presented legally and factually insufficient evidence of a probable, imminent, and irreparable injury.

## A.     Standard of Review

A trial court's grant or denial of a temporary injunction is reviewed for an abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).  A trial court abuses its discretion if it rules in an arbitrary manner or without reference to guiding principles and rules.  *Butnaru*, 84 S.W.3d at 211.  A temporary injunction will be dissolved if it is based on an erroneous application of the law to the facts.  *Otten v. Town of China Grove*, 660 S.W.2d 565, 569 (Tex. App.—San Antonio 1983, writ dism'd).

In reviewing for an abuse of discretion, we do not review the issues under traditional legal and factual sufficiency standards. *Stein v. Killough*, 53 S.W.3d 36, 41 (Tex. App.—San Antonio 2001, no pet.). Legal and factual sufficiency claims are not independent grounds of error; they are factors we weigh in determining whether the trial court abused its discretion. *Id*. For example, we will find an abuse of discretion if the record reflects that the trial court's findings necessary to sustain its order are not supported by some evidence. *Id*.

We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order is so arbitrary that it "exceed[s] the bounds of reasonable discretion." *Ohio Dev., LLC v. Tapatio Springs Homeowners Ass'n*, No. 04-17-00002-CV, 2017 WL 2351103, at *2 (Tex. App.—San Antonio May 31, 2017, pet. denied) (quoting *Butnaru*, 84 S.W.3d at 204).

## B.      Applicable Law

A temporary injunction should only issue if the applicant establishes (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted. *Butnaru*, 84 S.W.3d at 204. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id*. In *Powell v. Baker*, No. 04-22-00653-CV, 2023 WL 5418810, at *5 (Tex. App.—San Antonio Aug. 23, 2023, no pet.) (mem. op.), we recognized that "[b]ecause real property is unique, the potential loss of rights in real property is a probable, imminent, and irreparable injury that qualifies an applicant for a temporary injunction."

The John White Trust primarily relies on *Long v. Long*, 814 S.W.2d 227 (Tex. App.—San Antonio 1991, no writ). We have summarized *Long* as:

> In *Long*, Norman Long engaged in conduct that restricted George Long in the use of a right-of-way easement he had over Norman's property. 814 S.W.2d at 227-28. George subsequently filed suit against Norman, and the trial court issued a temporary injunction enjoining Norman from restricting George's use of the easement. *Id.* at 228. This court, however, reversed the trial court's order and dissolved the temporary injunction. *Id.* at 229. One of our reasons for dissolving the injunction was that the record from the temporary injunction hearing did not support a finding of irreparable injury since George had other ways to access his property besides the right-of-way easement. *Id.* at 228. Because George was not completely cut off from his property, we explained "[t]he most that George will suffer is the injury of inconvenience." *Id.* We further stated that such injury "does not warrant the issuance of a temporary injunction." *Id.*

*Trada Partners VI, LP v. Vogt*, No. 04-06-00723-CV, 2007 WL 163181, at *2 (Tex. App.—San Antonio Jan. 24, 2007, no pet.) (mem. op.). The "other ways" for George to access his property were either an old gate that required him to "traverse approximately twenty-five feet of a grassy portion of the easement before gaining access to the roadway" or "another road situated on his property." *Long*, 814 S.W.2d 227-28, 228 n.1.

TCW Helotes Ranch primarily relies on *Powell*, 2023 WL 5418810, at *7–8. In *Powell*, two parties contributed real estate to a deer lease business. *Id.* at *1. When a dispute arose, one of the parties barricaded a portion of the land. *Id.* at *2. At the temporary injunction hearing, the trial court heard evidence that the normal animal caretaker could not feed deer on the barricaded portion of the property, and instead one of the parties hired someone to feed the deer on the non-barricaded portion. *Id.* Additionally, the normal animal caretaker testified that the barricade made it more time consuming to count deer and set coyote snares. *Id.* The trial court granted a temporary injunction that restrained any barricading. *Id.* at *3. We summarized the evidence as establishing that "the only route to the [barricaded property] from the [non-barricaded property] required the use of an easement on land owned by a third-party." *Id.* at *8. The appellant argued that the evidence was legally insufficient because the denial of access was a matter of convenience. *Id.* at *7. We held that "[b]ecause this route required use of an easement on land owned by a third party,

the trial court could have determined that, for purposes of evaluating irreparable injury, it was not a bona fide alternative route." *Id*. at *8.

## C.      Analysis

Much of the evidence considered by the trial court focuses on whether the Moore road easement was a viable alternative route for Tuleta's staff to use. This came in the form of evidence on whether: (1) Moore unduly interfered with the use of the Moore road easement; and (2) the Moore road easement was unsafe for travel, especially for emergency medical personnel. The John White Trust argues that the evidence relating to the Moore road easement being an unreliable alternative route is legally and factually insufficient. Therefore, the trial court abused its discretion in granting TCW Helotes Ranch a temporary injunction. TCW Helotes Ranch argues that even if the Moore road easement proved to be a reliable alternative route, such a fact cannot defeat a finding of probable, imminent, irreparable harm.

The alternative route in *Long* included one that was over the applicant's own property. 814 S.W.2d at 228 n.1. In this case, the alternative route that the John White Trust suggests Tuleta use is the Moore road easement, which runs over Moore's parcel. Thus, *Powell* rather than *Long* governs the disposition. Under *Powell*, we hold that because the Moore road easement requires Tuleta and her staff to use an easement over land owned by the MWM Helotes Ranch, the trial court could have determined that, for purposes of evaluating irreparable injury, the Moore road easement was not a bona fide alternative route. *Id*. at *8.

We overrule the John White Trust's sole issue.

## III. CONCLUSION

The trial court's temporary injunction order is affirmed.

Rebeca C. Martinez, Chief Justice